The City National Bank of Poughkeepsie, Appellant, *v.* William Phelps, Respondent.

P. & K., a firm of which defendant was a partner, executed to a State bank a written undertaking to be "responsible for the payment of any sum not to exceed" $5,000, which W. might require of said bank "for legitimate business purposes." In an action upon the guaranty, *held*, that it expressed a sufficient consideration to validate it under the statute of frauds; and that it was a continuing guaranty.

Also *held*, the fact that the money procured by W., upon the strength of the guaranty, was not used by him in his business, was no defense, in the absence of evidence that such other use was with the knowledge of the bank, or that the bank advanced more money than was needed for his legitimate business purposes, or that it was loaned for other than those purposes; that the bank was not required to see to the use made by W. of the money.

Also *held*, that no notice to defendant, of the acceptance of the guaranty, was necessary.

Also *held*, that the statute of limitations did not begin to run against the guaranty from the date of the first loan under it; that every authorized renewal of the first advance kept alive the indebtedness, and so as to every authorized subsequent advance.

Also *held*, that the liability created by the guaranty, being that of a firm, was joint, and that notice to the bank of the dissolution of the firm determined its right to loan on the faith of the guaranty, or to make further renewals of existing obligations.

The said State bank, after loans had been made to W., upon the faith of the guaranty, abandoned its State organization, and was reorganized as a National bank, as authorized by the act of 1865 (Chap. 97, Laws of 1865). A portion of said loans had not been paid, new notes having been given in renewal. *Held*, that for whatever sum the defendant was bound to the State bank, when it was reorganized, that indebtedness passed to plaintiff; and, conceding that plaintiff could not renew without the assent of defendant, or make fresh advances and still hold him liable, it had the right to enforce the liability to the State bank.

It appeared that defendant knew of, and assented, in writing and orally, to the renewal. *Held*, that he was concluded thereby from claiming that the sureties were discharged by extension of time.

Also *held*, that, conceding the statute of limitations was a bar to an action against K., the bar did not apply in favor of defendant because of his admission, in writing, of the continuance of the indebtedness (Code of Procedure, § 110; Code of Civil Procedure, § 395); and, although the original obligation was joint, defendant's individual action has continued the liability, or created a new one against him alone.

The complaint averred that the guaranty was to the plaintiff instead of to its predecessor, the State bank. The complaint was dismissed on trial. It did not appear that the failure to sustain the complaint by proof, in this respect, was made or relied upon at the trial. *Held,* that while, if the point had been specifically taken, and the dismissal had been placed upon that ground, and there had been no motion made and denied for an amendment, the ruling might be sustained, it could not be presumed that the trial court placed its decision upon a ground so little affecting the merits.

(Argued October 10, 1881 ; decided October 25, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 14, 1880, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial.

This action was originally brought against William Phelps and Martin E. Kingman, who were formerly partners, doing business under the firm name of Phelps & Kingman, upon a written instrument executed by that firm, of which the following is a copy.

"New York, *February* 15, 1861.

" City Bank, Poughkeepsie, N. Y. :

" We hold ourselves responsible for the payment of any sum not to exceed five thousand dollars ($5,000), Mr. C. H. Woodruff may require of your bank for legitimate business purposes.

"Yours respectfully,<br>"PHELPS & KINGMAN."

It was taken to the City Bank at about the date of it, and advances were made by the bank upon it to Mr. Woodruff shortly afterward. In all, $4,000 was advanced to him on his own notes, and subsequently his business paper to a large amount was discounted. Of the $4,000 there was still $2,150 unpaid in July, 1876, and of the business paper about $6,000. Woodruff failed in June, 1876. The firm of Phelps & Kingman was dissolved some time prior to November 20, 1872. The City Bank was organized August 30, 1860. It was con-

verted into the City National Bank, the plaintiff herein, June, 1865. In March, 1875, the cashier of the plaintiff wrote to Mr. Phelps, asking to have the guaranty renewed. In October following, Mr. Phelps wrote to the cashier a letter, of which the following is a copy :

"NEW YORK, *October* 6, 1875.

" A. H. CHAMPLIN, Esq., *Cashier :*

" DEAR SIR — Several years since the firm of Phelps & Kingman gave your bank an obligation holding ourselves responsible for the payment of any sum not to exceed five thousand dollars ($5,000) Mr. C. H. Woodruff may require for legitimate business purposes. Mr. Woodruff informs me that you desire to have this obligation renewed, and Mr. Kingman declines to sign the renewal; I regarded the obligation good when given, and believe it to be just as good now as it was then, so that I do not see the slightest advantage in having it renewed. Mr. Woodruff assures me, and as he seems to be improving financially, I have no doubt that he will, within a reasonable time, retire the paper for which the obligation was given. As I do not see how your bank can be prejudiced, please let the matter remain, and oblige,

" Yours very respectfully,

" WM. PHELPS."

A short time afterward Mr. Phelps went to the bank, and, in an interview with the cashier and vice-president, declared the guaranty good, and requested the bank to hold it, and keep on renewing the notes. Upon the first trial of the action, the complaint was dismissed as to Kingman, and a verdict rendered against Phelps, which was reversed on appeal (16 Hun, 158).

Further facts appear in the opinion.

*Homer A. Nelson* for appellant. The guaranty was good within the statute of frauds. There was a sufficient expression of the consideration. (*Church* v. *Brown,* 21 N. Y. 315; *Union Bk.* v. *Coster's Executors,* 3 id. 203.) This was a continuing guaranty unaffected by the extent of the dealings between

Woodruff and the bank, or by the statute of limitations. (*Rindge* v. *Judson*, 24 N. Y. 64.) The conversion of the City Bank into the City National Bank did not destroy or affect the guaranty. (*First Soc. M. E. Church* v. *Brownell*, 5 Hun, 464.) The letter of October 6, 1875, and the admissions and declarations made by the defendant shortly afterward to the cashier and vice-president of the plaintiff, if they do not amount to a renewal of the guaranty, work an estoppel as to the defendant against his now claiming that he is released from the guaranty. (*Brown* v. *Bowen*, 30 N. Y. 519, 541; *Gaylor* v. *Van Loan*, 15 Wend. 308; *Brookman* v. *Metcalf*, 4 Robt. 568.)

*Edward S. Clinch* for respondent. The instrument on which this action is brought is void under the statute of frauds, as it was when the instrument was made. (*Packer* v. *Willson*, 15 Wend. 343; *Sears* v. *Brink*, 3 Johns. 210; *Church* v. *Brown*, 21 N. Y. 315; *Bennett* v. *Pratt*, 4 Denio, 275; *Castle* v. *Beardsley*, 10 Hun, 343.) The paper is not a continuing guaranty, but relates only to the first transaction under it, and, therefore, the statute of limitations commenced to run from the date of the first transaction, February 20, 1861. (*Rogers* v. *Warner*, 8 Johns. 119; *Fellows* v. *Prentiss*, 3 Denio, 512; *Cremer* v. *Higginson*, 1 Mason, 323.) The action must stand if at all on the instrument set forth in the complaint, and if it cannot, the defendant was entitled to judgment. (*Richtmeyer* v. *Remsen*, 38 N. Y. 266; *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 20 Barb. 468.) The bank accepted the paper with the limitation of the uses to which the money was to be applied, and must abide by it. (*Barns* v. *Barrow*, 61 N. Y. 39; *Strong* v. *Lyon*, 63 id. 172; *Stockbridge* v. *Schoonmaker*, 45 Barb. 100; *Davis Sewing Machine Co.* v. *Lawrence*, 3 N. Y. S. C. [T. & C.] 391.) Any liability created by the instrument was a firm and joint liability, and that liability for subsequent transactions must have been terminated on notice to plaintiff of the dissolution of defendant's firm. (16 Hun, 161; *Lusk* v. *Smith*, 8 Barb. 570; 2 Parsons on Contracts, 19; *Weston* v. *Barton*, 4 Taunt. 673; *Penoyer* v. *Watson*, 16 Johns. 100; *Myers* v. *Edge*,

7 Term, 254 ; *Walsh* v. *Bailie,* 10 Johns. 180 ; *Robbins.*v. *Bingham,* 4 id. 476.) The City National Bank of Poughkeepsie cannot hold the defendant on a contract of suretyship made with another corporation — the City Bank. (*Nat'l Park Bk.* v. *Gunst,* 1 Abb. N. C. 292; *M. Nat. Bk.* v. *Macnaughton,* id. 293 ; *Bowen* v. *First Nat. Bk. of Medina,* 34 How. Pr. 408 ; *Nat. Bk. of Fairhaven* v. *The Phœnix Warehousing Co.,* 6 Hun, 71 ; *Robinson* v. *Nat. Bk. of New Berne,* 19 id. 477 ; affirmed, 81 N. Y. 385 ; *Miller* v. *Stewart,* 9 Wheat. 680 ; *Union Bk.* v. *Ridgely,* 1 H. & G. 324 ; 2 Parsons on Contracts, 20 ; *Wright* v. *Russell,* 3 Wells, 532 ; *Myers* v. *Edge,* 7 T. R. 254 ; Parsons on Partnership, 333 ; Chitty on Cont. 577 ; *Ludlow* v. *Simond,* 2 Caines' Cases, 57 ; *Dance* v. *Gridler,* 1 B. & P. [N. S.] 34 ; *Ducker* v. *Rapp,* 67 N. Y. 464 ; *Barns* v. *Barrow,* 61 id. 39 ; *Wilson* v. *Edwards,* 6 Lans. 134 ; *Bagley* v. *Clark,* 7 Bosw. 94.) What was said by the defendant in October, 1875, to the cashier and vice-president does not work an estoppel and prevent defendant from now claiming that he is released from the guaranty to the City Bank. (2 Parsons on Cont. 18 ; *Merrimack Co. Bk.* v. *Brown,* 12 N. H. 320 ; *Fowler* v. *Brooks,* 13 id. 240 ; *Roe* v. *Harrison,* 2 T. R. 425 ; *Montgomery* v. *Hamilton,* 43 Ind. 451 ; De Colyer on Guaranty, 326, 316, note ; *Silvernail* v. *Cole,* 12 Barb. 685 ; *Brewster* v. *Striker,* 2 N. Y. 19, 41 ; 6 Wait's Actions and Defenses, 696, § 7 ; *Platt* v. *Scott,* 6 Blackf. [Ind.] 389 ; *Curtiss* v. *Brooks,* 37 Barb. 476.) Mr. Phelps' omission to assert his non-liability through ignorance of it, does not estop him from asserting it now. (6 Wait's Actions and Defenses, 707, § 21 ; *Frost* v. *Koon,* 30 N. Y. 428.) The promise to pay is void under the statute of frauds, because not in writing. (*Mallory* v. *Gillett,* 21 N. Y. 412, 414–416 ; *Duffy* v. *Wunsch,* 42 id. 243 ; *Belknap* v. *Bender,* 4 Hun, 414 ; *Simpson* v. *Patten,* 4 Johns. 422 ; 7 Wait's Actions and Defenses, 16.) Estoppel is based on the idea that the party asserts or admits the existence of some fact of which the other party is ignorant. (*White* v. *Ashton,* 51 N. Y. 280.) The doctrine of estoppel is never applied except to prevent a party taking advantage of his

deception, and if there be no deception there can be no estoppel. (*Plumb* v. *Cattaraugus Co. Mut. Ins. Co.*, 18 N. Y. 392; *Finnegan* v. *Carraher*, 47 id. 493.) Plaintiff's claim that what was said by Mr. Phelps amounted to a promise to do something in the future is untenable, as the doctrine of estoppel is not applicable to promises prospective in their obligation. (6 Wait's Actions and Defenses, 682, § 2; *Musgrave* v. *Sherwood*, 54 How. 346; *White* v. *Ashton*, 51 N. Y. 280.) The burden is on the party invoking the doctrine of estoppel to show prejudice. (6 Wait's Actions and Defenses, 685, § 6; *Malony* v. *Horan*, 49 N. Y. 111; *Mattoon* v. *Young*, 2 Hun, 562.) The complaint was also properly dismissed for failure of proof. (*Stevens* v. *Mayor, etc.*, 12 Weekly Dig. 58; *People's Bk.* v. *Mitchell*, 73 N. Y. 415.) Proof of notice of acceptance of the guaranty by the City Bank was necessary to complete the obligation. (Baylies on Sureties and Guarantors, 194–198, 196–7, notes.) The practice of this court did not require the appeal book to contain the grounds for the dismissal of the complaint. Error is not presumed, but it is incumbent upon the appellant to show that it has been committed; otherwise the burden is on the respondent to show that the judgment of the court below is correct. (*Carman* v. *Pultz*, 21 N. Y. 551; *Brant* v. *Trimmer*, 47 id. 97; *Grant* v. *Morse*, 22 id. 324–5; *Simar* v. *Canaday*, 53 id. 301; *People* v. *Supervisors*, 70 id. 233; *Jewell* v. *Van Steenburg*, 58 id. 93; *Clark* v. *Donaldson*, 49 How. 65; *Clarke* v. *Lourie*, 82 N. Y. 580.)

Folger, Ch. J. The plaintiff was defeated at the circuit, and its complaint dismissed. No reasons therefor were stated at the trial, and we must see whether the defendant presents good reason therefor in his points in this court.

The point that the guaranty was void under the statute of frauds, as not expressing a consideration, is not good. (*Church* v. *Brown*, 21 N. Y. 315, and cases there cited.) The point that it was not a continuing guaranty is not good. (*Rindge* v. *Judson*, 24 N. Y. 64, and cases there cited.) The point that the plaintiff cannot recover on the letter from the defendant of

October 6, 1875, is well taken; that is to say, it cannot make out by that letter alone, an original undertaking by the defendant; but that position established, will not of itself, sustain the dismissal of the complaint.   The point that the money furnished to Woodruff, on the strength of the guaranty, was not used by him in the purposes of his legitimate business, is not well taken.   Conceding that it be true that he used any part of that money for other purpose than that of his legitimate business, it is not shown that it was with the knowledge of the bank, or that the bank let him have more money, upon the guarantee, than was needed for his legitimate business purposes; or that it was loaned to him for other than those purposes.   The bank was not obliged to see to the use made of the money by Woodruff.   If it let him have no more than he required (that is, needed) for legitimate business purposes, it met the condition of the guaranty.   It is not shown that it did otherwise.   It is inferable that it kept within the limit.   The point that the statute of limitations began to run from the date of the first transaction under the guaranty, to wit, the 20th of February, 1861, is not well taken.   The guaranty was a continuing one, and every authorized renewal of the first advance kept alive the indebtedness created by that advance, and by every authorized subsequent advance it was similarly affected.

The point is good, that the liability created by the guaranty was that of a business firm and was joint, and that notice of the dissolution of the copartnership, on or about the 5th August, 1872, determined the right of the bank to loan to Woodruff more money on the faith of that liability, or to make further renewal of existing obligations.   The copartnership being dissolved, there could no more be created a joint liability against the persons who were the former partners; nor, ordinarily, could a several liability arise where a joint one was attempted and failed.   But this point alone, or with the one above held good, is not enough to sustain the dismissal of the complaint.

As we view the case, we need not pass upon the full scope of the point that the City National Bank cannot hold the defendant upon the obligation to the City Bank.   The point, in

its extent, rests upon the proposition, that the plaintiff is a different corporation from the State City Bank; that they are distinct parties, and that the obligation of a surety to one party may not be availed of by another party. That the proposition applies to the change made by the City Bank from State to Federal jurisdiction is not so easy of concession or refutation as it may seem at first sight. This much, however, is certain, that whatever sum the State City Bank had a right to have of the defendant at the time when it took on an organization under the Federal law, the right to have that sum of him passed to the National City Bank. That new organization was made in 1865. The testimony shows that there remained unpaid as late as 3d July, 1876, a considerable part of the first indebtedness of Woodruff. So much of that indebtedness had never been extinguished. New notes had been given in renewal. These were but continuations of the original credit. They did not pay the original debt. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521.) If the City Bank owned a liability of the defendant to pay that sum, the ownership of it passed to the City National Bank, as an asset of the City Bank transferred by law. (Laws of 1865, chap. 97, p. 169, § 6.) Though it be conceded for this time, that the City National Bank could not rightfully renew again, without the assent of the defendant; or make fresh advances, and still keep the defendant liable; it had the right to enforce the liability if one existed to the City Bank. No point is made, nor can any question arise, that by subsequent renewals of the notes of the principal debtor, an extension of time was given to him whereby the sureties were discharged. No question can arise. It is plain that the defendant knew of the extensions of time granted to Woodruff, and assented to them. His letter of October 5, 1875, though it may not alone found an action against him, is enough to conclude him on this head, aided as it is by the testimony of the cashier, and vice-president Innis, of his oral statements and declarations. It is not needed that we now consider the question of an estoppel *in pais* upon the defendant. The point that the plaintiff failed to sustain its complaint by proof is

not well taken. The averment of the complaint was indeed that the guaranty was to the plaintiff, while the proof showed that it was to the City Bank. If the dismissal of the complaint had been placed distinctly on this ground, although it does not go to the merits of the controversy, and there had been no motion made and denied for an amendment of the pleadings, we might be constrained to sustain the ruling. But nowhere in the appeal book does it appear that this was made or relied upon at the trial. It is hardly to be supposed that the trial court would have placed its decision upon a ground so little affecting the merits of the litigation.

The bar of the statute of limitations is set up in the answer. It is doubtful, in view of the points made in this court, whether it was meant by it to present the question whether the statute did not begin to run from the date of the guaranty, or at least from the date of the first loan to Woodruff based upon it, or from the time of the reorganization of the City Bank, or from the time of notice to the City Bank or to the plaintiff of the dissolution of the firm of Phelps & Kingman. Conceding, for this time, that the statute was a bar to an action against Kingman, it is not plain that it is to this one against Phelps. The lapse of the time fixed by the statute raises a presumption which may be met by proof of the continuance or renewal of the obligation. An acknowledgment of continuance or new promise, in writing, by the debtor, furnishes that proof. (Old Code, § 110; new Code, § 395.) Though one copartner or joint debtor may not always bind his co-contractor in that way, yet he will, though the co-contractor is not held thereby, be held himself. (*Van Keuren* v. *Parmelee*, 2 N. Y. 523; *Shoemaker* v. *Benedict*, 11 id. 176.) It appears that this action was begun in the first part of January, 1877. In October, 1875, Phelps sent to the plaintiff a letter, in which was an acknowledgment of the continued existence of the obligation. The bar of the statute does not apply in favor of the defendant.

The point is not good that there was no notice to the defendant of the acceptance of the guaranty. The jury could have

well inferred, from the letters and negotiations of the parties, that the guarantors had early notice of the acceptance of it. The letters show conclusively that Phelps did have notice thereof, though at a late period, and that he then treated it as binding. Kingman went to the banking-house and looked at it  But more than that, this is a kind of guaranty, the acceptance of which need not be notified to the maker.  It is an absolute guaranty. (See *Whitney* v. *Groot*, 24 Wend. 82 ; *Smith* v. *Dann*, 6 Hill, 543 ; *Clark* v. *Burdett*, 2 Hall, 217 ; *Douglass* v. *Howland*, 24 Wend. 35 ; *Union Bank* v. *Coster's Ex'rs*, 3 N. Y. 203 ; *Kennaway* v. *Treleavan*, 5 M. & W. 498, 500, 501.)

The case then is this : The defendant and his copartner in business gave to the City Bank a valid and binding continuing guaranty for the payment of moneys loaned to Woodruff ; upon the strength of that guaranty the City Bank made loans to Woodruff, which, upon the strength of the guaranty, were renewed from time to time, in whole or in part, and have not yet been fully paid ; at the time when the City Bank gave up its organization under the State law, there was an amount unpaid of those loans, which it had a right then to collect of Woodruff or of the defendant, so far as any point yet presented to us avails to the contrary ; that right passed as an asset of the City Bank to the plaintiff, and when possessed of by it was enforceable by it against Woodruff or the defendant ; that right has been kept alive by repeated renewals and extensions of the time of payment, which were made with the assent, if not at the request, of the defendant ; though it be conceded that the copartner of the defendant has been released by operation of law, and though the liability of the defendant was at first joint, his individual action toward the plaintiff has continued that liability, or created a new one against him alone, on the same principle on which one of several copartners or joint debtors may keep alive or renew a joint liability, so far as to affect himself, though those at first bound with him have been relieved by the running of the statute of limitations. We see no reason why the plaintiff should not recover of the defend-

ant so much of the indebtedness of Woodruff to the City Bank as was incurred before that bank reorganized into The City National Bank; and as remained unpaid at that time.

It follows that it was error to dismiss the complaint, and the judgment should be reversed and a new trial ordered etc.

All concur.

Judgment reversed