THE CITY NATIONAL BANK OF POUGHKEEPSIE, Respondent, *v.* WILLIAM PHELPS, Appellant.

Where, under the provisions of the National Banking Act, and under authority of the act of 1865 (Chap. 97, Laws of 1865), a State bank is transformed into a National bank, it is but a continuance of the same body under a changed jurisdiction, and between it and those who have contracted with it, it retains its identity and may, as a National bank, enforce contracts made with it as a State bank.

Where, therefore, a State bank, at the time of its change to a National bank, held a continuing guaranty of loans made by it to one W., upon the strength of which it had made loans, and after the change further advances were made, — *Held*, that an action was maintainable by the National bank upon the guaranty; and that the guarantor was liable for the loans made both before and after the change.

(Submitted May 8, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made at the May term, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The case is reported upon a former appeal in 89 N. Y. 484.

This action was originally brought against William Phelps and Martin E. Kingman, composing the firm of Phelps & Kingman, upon an instrument executed by that firm in 1861 to the City Bank of Poughkeepsie, guaranteeing the payment of any sum not exceeding $5,000, which one Woodruff might require of the bank for legitimate business purposes.

The said firm was dissolved in 1872. In June, 1875, the said bank was converted into a National bank, the plaintiff herein.

Upon the first trial of the action the complaint was dismissed as to Kingman.

The further material facts are stated in the opinion.

*Edward S. Clinch* for appellant. As this action was not commenced until December, 1876, the statute of limitations is a complete defense if it commenced to run any time before December, 1870. (Code of Pro., § 91; 86 N. Y. 490.) An acknowledgment, to be sufficient as an admission of an indebtedness, must be an unqualified admission of the debt, and show a willingness to pay it. (*Bloodgood* v. *Bruen*, 8 N. Y. 362; *VanKeuren* v. *Parmelee*, 2 id. 323; *Roosevelt* v. *Mark*, 6 Johns. Ch. 290; *Com. Mut. Ins. Co.* v. *Brett*, 44 Barb. 489; *Stoker* v. *Walters*, 12 W'kly Dig. 321; 24 Hun, 604; *Wakeman* v. *Sherman*, 9 N. Y. 85; *Allen* v. *Webster*, 15 Wend. 284; *Ross* v. *Ross*, 6 Hun, 81; *Sands* v. *Gelston*, 15 Johns. 511; *Danforth* v. *Culver*, 11 id. 146; *Laurence* v. *Hopkins*, 13 id. 288; *Bell* v. *Morrison*, 1 Peters, 351, 357, 358, 362; *Wetzell* v. *Bussard*, 11 Wheat. 309.) The acknowledgment must be of a present, subsisting, particular debt, and the debt and the amount of it must be so referred to in the acknowledgment, that extrinsic evidence is not necessary to make it certain to what debt or to what amount of indebtedness the acknowledgment referred. (*Bell* v. *Morrison*, 1 Peters, 365; *Hancock* v. *Bliss*, 7 Wend. 268; *Patterson* v. *Choate*, id. 445; *Bangs* v. *Hall*, 2 Pick. 368; *Harrison* v. *Handley*, 1 Bibb [Ky.], 443; *Stafford* v. *Richardson*, 15 Wend. 306; *Clemenson* v. *Williams*, 8 Cranch, 72; *Wetzel* v. *Bussard*, 11 Wheat. 309; *Purdy* v. *Austin*, 3 Wend. 187, 190.) Inserting a debt in a schedule of creditors in insolvency proceedings is an acknowledgment of a subsisting debt, but is not a promise to pay. (*Richardson* v. *Thomas*, 13 Gray, 381; *Brown* v. *Bridges* 2 Miles [Penn.], 424; Angell on Lim. 247.) The plaintiff cannot, in an action against a firm, on a joint liability, recover on a new promise or acknowledgment made by a member of the firm. (*Van Keuren* v. *Parmelee*, 2 N. Y. 523; *Lonsdale* v. *Brown*, 3 Wash. 404.) A plaintiff cannot bring an action to enforce

against two persons a joint liability under one instrument and during the trial discontinue the action as to one, and proceed against the other to enforce a several liability not pleaded, on an instrument not pleaded. (86 N. Y. 489; *Richtmeyer* v. *Remsen*, 38 id. 206; *N. Y. Ins. Co.* v. *N. P. Ins. Co.*, 20 Barb. 468.) Any liability under the guaranty was a firm and joint liability which for subsequent transactions must have been terminated on notice to plaintiff of the dissolution of the firm. (16 Hun, 161; *Lusk* v. *Smith*, 8 Barb. 570; 2 Pars. on Cont. 19; *Weston* v. *Barton*, 4 Taunt. 673; *Penoyer* v. *Watson*, 16 Johns. 100; *Myers* v. *Edge*, 7 Tenn. 254; *Walsh* v. *Bailie*, 10 Johns. 180; *Robbins* v. *Bingham*, 4 id. 476.) Even if the banks did not have actual notice of the dissolution of Phelps & Kingman they had enough to put them on their inquiry, and they are chargeable with notice of the facts the inquiry would have disclosed. (*Eaton, Cole & B. & Co.* v. *Every*, 83 N. Y. 34; *Cent. N. Bk.* v. *Valentine*, 15 Wk'ly Dig. 479; 23 Hun, 240; *Young* v. *Tibbitts*, 32 Wis. 79; *Kirby* v. *Hewitt*, 26 Barb. 607; Pars. on Part. 411; *Am. L. T. Co.* v. *Wortendyke*, 24 N. Y. 550.) The City National Bank having been organized after Phelps & Kingman had dissolved, notice to it was impossible, and whether it had notice of the dissolution of that firm or not, it could not hold it on transactions between the bank and Woodruff. (*Lansing* v. *Gaine*, 2 Johns. 300; *Graves* v. *Merry*, 6 Cow. 701; *Shurlds* v. *Tilson*, 2 McLean, 458; *Watkinson* v. *Bk. of Pennsylvania*, 4 Whart. 482; *Gollicott* v. *Planters & M. Bk.*, 1 McMull. 209; *Maudlin* v. *Branch Bk.*, 2 Ala. 502; *Lucas* v. *Bk. of Darien*, 2 Stew. 280; *Prentiss* v. *Sinclair*, 5 Vt. 149.) The question whether the City Bank or the City National Bank had notice of the dissolution of Phelps & Kingman was a question of law, to be determined by the court. (*Claflin* v. *Lenheim*, 66 N. Y. 306; *Birdsall* v. *Russell*, 29 id. 220, 249; *Williamson* v. *Brown*, 15 id. 354; *Welsh* v. *Sage*, 47 id. 143, 147.) The City National Bank cannot hold the defendant for advances on a contract of suretyship made with the City Bank two years before the City National Bank was organized. (*Nat. Park*

*Bk.* v. *Gunst*, 1 Abb. N. C. 292 ; *Nat. Bk. of Metropolis* v. *Orcutt*, 48 Barb. 257 ; *Mer. Nat. Bk.* v. *MacNaughton*, 1 Abb. N. C. 293 ; *Bowen* v. *First Nat. Bk.*, 34 How. Pr. 409 ; *Nat. Bk. of F.* v. *Phœnix W. Co.*, 6 Hun, 73 ; *Robinson* v. *Nat. Bk. of N.*, 19 id. 477 ; 81 N. Y. 385 ; *Miller* v. *Stewart*, 9 Wheat. 680 ; *Un. Bk.* v. *Ridgely*, 1 Har. & G. 324 ; 2 Pars. on Cont. 20 ; *Wright* v. *Russell*, 3 Wills. 532 ; Pars. on Part. 333 ; Chitty on Cont. 577 ; *Ludlow* v. *Simond*, 2 Cai. Cas. 57 ; *Dance* v. *Gidler*, 1 Bos. & P. [N. S.] 34 ; *Deecker* v. *Rapp*, 67 N. Y. 464 ; *Wilson* v. *Edwards*, 6 Lans. 134 ; *Bagley* v. *Clark*, 7 Bosw. 94 ; *Ward* v. *Stahl*, 81 N. Y. 406.) The renewal of the Woodruff notes after notice of dissolution of Phelps & Kingman released the firm from any liability for the advances represented by the notes. (*Pomeroy* v. *Tanner*, 70 N. Y. 547 ; *Billington* v. *Wagoner*, 33 id. 31 ; *Place* v. *McIlvain*, 38 id. 96 ; *Fellows* v. *Prentiss*, 3 Denio, 512 ; *Meyers* v. *Wells*, 5 Hill, 463 ; *Dorlon* v. *Christie*, 39 Barb. 614 ; *Lowman* v. *Yates*, 37 N. Y. 601 ; *Miller* v. *McCann*, 7 Paige, 451.) Where a surety is in fact discharged by a novation or by a material change of the debt, and, in ignorance of his being thus freed, makes a subsequent acknowledgment of his liability, he cannot be held thereon. (2 Pars. on Cont. 18 ; *Merrimack Co. Bk.* v. *Brown*, 12 N. H. 320 ; *Fowler* v. *Brooks*, 13 id. 240 ; *Roe* v. *Harrison*, 2 Term Rep. 425 ; *Montgomery* v. *Hamilton*, 43 N. Y. 451 ; De Colyer on Guaranty, 316, note, 326 ; *Silvernail* v. *Cole*, 12 Barb. 685.) If Phelps, from what the cashier and vice-president told him, concluded he was liable to plaintiff, and said so, he would be estopped from denying his liability. (6 Wait's Act. and Def. 696, § 7 ; *Platt* v. *Scott*, 6 Blackf. [Ind.] 389 ; *Curtiss* v. *Brooks*, 37 Barb. 476.) His omission to assert his non-liability, through ignorance of the law, does not estop him from asserting it now. (6 Wait's Act. and Def. 707, § 21 ; *Frost* v. *Keon*, 30 N. Y. 428.) The promise to pay, not being in writing, is void under the statute of frauds. (*Mallory* v. *Gillett*, 21 N. Y. 412, 414-416 ; *Duffy* v. *Wunsch*, 42 id. 243 ; *Belk-*

*nap* v. *Bender*, 4 Hun, 414; *Simpson* v. *Patten*, 4 Johns. 422; 7 Wait's Act. and Def. 16.) Estoppel is based on the idea that the party asserts or admits the existence of some fact of which the other party is ignorant. (*White* v. *Ashton*, 51 N. Y. 280: *Plumb* v. *Catt. Co. Mut. Ins. Co.*, 18 id. 392; *Finnegan* v. *Carraher*, 47 id. 493; 6 Wait's Act. and Def. 682, § 2; 685, § 6; *Musgrave* v. *Sherwood*, 54 How. 346; *Maloney* v. *Horan*, 49 N. Y. 111; *Mattoon* v. *Young*, 2 Hun, 562.) Plaintiff should not have been permitted to amend his complaint on the last trial. (*Bewley* v. *Eq. L. Ins. Co.*, 10 Weekly Dig. 191; *Gowdy* v. *Pollain*, 2 Hun, 218; *Chase* v. *Lord*, 2 Weekly Dig. 3; *Abham* v. *Boyd*, 7 Daly, 30; Code of Civ. Pro., § 723; *Hood* v. *Hood*, 85 N. Y. 579.)

*H. A. Nelson* and *W. Farrington* for respondent. The declarations, verbal and written, of the defendant waived the objections to the continuance of the guaranty founded upon a dissolution of the firm and the change in the bank. (*City Nat. Bank* v. *Phelps*, 86 N. Y. 484.) The claim recovered in this action was not barred by the statute of limitations. (86 N. Y. 484.) The dismissal of the complaint as to Kingman did not affect the liability of Phelps. (86 N. Y. 484; *Van Keuren* v. *Parmalee*, 2 id. 523.) The conversion of the City Bank into the City National Bank did not destroy or affect the guaranty. (Nat. Bkg. Act, chap. 97, Laws of 1865; 86 N. Y. 484.) The letter of October 6, 1875, and the admissions and declarations made by defendant shortly afterward to plaintiff's cashier and vice-president, if they do not amount to a guaranty, work an estoppel as to defendant against his now claiming that he is released from the guaranty. (*Brown* v. *Bowen*, 30 N. Y. 519, 541; *Gaylord* v. *Van Loan*, 15 Wend. 308; *Brookman* v. *Metcalf*, 4 Robt. 568; 2 Pars. on Cont. 340; *Dezell* v. *Odell*, 3 Hill, 215.)

RAPALLO, J. On the former appeal in this case (86 N. Y. 484), we decided that the plaintiff was entitled to recover of the defendant so much of the indebtedness of Woodruff to the

City Bank, as was incurred before that bank reorganized as the City National Bank, and as remained unpaid. The same points were raised on that appeal, which are now urged by the appellant, so far as the indebtedness above referred to is concerned, and in that respect there was no material change in the facts on the second trial.

The question of the liability of the defendant for indebtedness incurred by Woodruff after the City Bank reorganized as a National bank was not decided, nor necessarily involved, on the former appeal. The judgment then under review was one of nonsuit, and if the plaintiff had a right of action for any part of his demand, that was sufficient to require a reversal without regard to the amount recoverable. The case was, therefore, decided on the ground that even if it should be conceded for the time that the *City National Bank* could not make fresh advances to Woodruff and hold the defendant liable on the guaranty, he was liable at all events for the sums advanced by the *City Bank*, the obligations for which had been renewed, with the defendant's consent, by the *City National Bank* which succeeded to all the rights of the *City Bank*.

On the present appeal, the point which was thus left undecided is distinctly and directly presented. On the second trial the plaintiff recovered the amount of three notes given by Woodruff to the City *National* Bank, viz., one of $500, one of $250 and one of $1,400. The first two, amounting to $750, were shown to have been given for a balance remaining unpaid, of the original advances made to Woodruff by the *City* Bank under the guaranty, and they consequently are covered by the decision in the former case. But the origin of the $1,400 note was not thus traced, and the evidence was to the effect that it was given for a balance remaining unpaid on a note for $2,000 discounted for Woodruff by the City *National* Bank July 26, 1869, after the reorganization, which had been reduced by payments, and renewed from time to time down to January 17, 1876, when the last renewal was given for $1,400, payable four months after date. In respect to this note, the

judge on the trial charged the jury that the guaranty of Phelps & Kingman, which was a continuing guaranty, continued, and that the bank had a right to advance upon it to the extent of $5,000, so long as the firm of Phelps & Kingman existed, or so long as the bank holding the guaranty and acting upon it had no notice of the dissolution of this firm. And he further charged that when the change was made from the *City* Bank to the City *National* Bank, whatever debt was due upon that guaranty, vested in the City *National* Bank. Thus far the charge conformed to the decision of this court before referred to; but the judge went on to charge further that the guaranty continued so that the City *National* Bank could continue to advance upon it so long as it had no notice of the dissolution of the firm of Phelps & Kingman. If this position is sustained, the $1,400 note stands upon the same footing as the notes of $500 and $250, and the reorganization of the City Bank in pursuance of the National Banking Act, becomes immaterial to the present controversy.

In regard to this point Folger, J., in his opinion in the former appeal, says (86 N. Y. 490): "As we view the case we need not pass upon the full scope of the point that the City *National* Bank cannot hold the defendant upon the obligation to the *City* Bank. The point, in its extent, rests upon the proposition that the plaintiff is a distinct corporation from the State City Bank; that they are distinct parties, and that the obligation of a surety to one party may not be availed of by another party. That this proposition applies to the change made by the City Bank from State to Federal jurisdiction, is not so easy of concession or refutation as it may seem at first sight."

The question was thus left open, and the case disposed of without regard to it. But it now becomes necessary to determine it, and, on consideration, we have come to the conclusion that it should be determined in accordance with the view expressed by the judge upon the trial, and by Gilbert, J., in his opinion in this case at General Term (16 Hun, 158). The general scheme of the National Banking Act is that State banks may

avail themselves of its privileges and subject themselves to its liabilities, without abandoning their corporate existence, without any change in the organization, officers, stockholders, or property, and without interruption of their pending business or contracts. All property and rights which they held before organizing as National banks are continued to be vested in them under their new status. Great inconveniences might result if this saving of their existing assets did not include pending executory contracts, and pending guarantees, as well as vested rights of property. Although, in form, their property and rights as State banks, purport to be transferred to them in their new status of National banks, yet in substance there is no actual transfer from one body to another, but a continuation of the same body, under a changed jurisdiction. As between it and those who have contracted with it, it retains its identity, notwithstanding its acceptance of the privilege of organizing under the National Banking Act.

The defendant Phelps in his letter of October 6, 1875, appears to have acted in accordance with this view. The guaranty was given to the City Bank in February, 1861. The organization as a National bank was in 1865. Woodruff appears to have gone on renewing the notes discounted for him by the City Bank, and also the note discounted for him by the City National Bank in 1869, down to the time the letter was written, October 6, 1875. Phelps then addresses the cashier of the City *National* Bank treating it as identical with the City Bank and speaking of the guaranty as an obligation given to "your bank," stating that he regarded the guaranty as good when given, and that he believes it "just as good now as it was then," showing his understanding that it continued to run in favor of the City National Bank. He continues, " so that I do not see the slightest advantage in having it renewed." This was in response to a request on the part of the bank to renew the guaranty. After the receipt of that letter and a verbal request from Phelps to continue business under the guaranty and to renew the notes, the bank went on renewing the paper of Woodruff, which it

then held, down to April, 1876, soon after which date Wood-ruff failed.

A point is made by the defendant that, at the time of the verbal request above referred to, Phelps said that Woodruff would pay $500 on the notes on each renewal, but that the bank allowed the renewals on payment of a smaller sum. On this point we concur with the learned judge who delivered the opinion at General Term, in holding that this proposed payment was not a condition of Phelps' consent to the renewal, but was held out by him as an inducement to the bank to accede to his request to give indulgence to Woodruff.

We do not think that the judge erred in submitting to the jury the question whether the plaintiff had notice of the dissolution of the firm of Phelps & Kingman when it discounted the note of July 26, 1869.

The judgment should be affirmed.

All concur:

Judgment affirmed.