THE COMMONWEALTH-ATLANTIC NATIONAL BANK OF
BOSTON, petitioner.

THE FIRST NATIONAL BANK OF BOSTON, petitioner.

Middlesex.    Essex.    December 14, 1923. — June 12, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Probate Court,* Jurisdiction.    *Will,* Identity of corporation designated as
executor.    *Trust Company.    National Bank.    Executor and Adminis-
trator.*

In the absence of an explicit provision in the governing statutes to the
effect that a national bank, into which a trust company organized
under the laws of this Commonwealth has been converted under the
provisions of U. S. Rev. Sts. § 5154, shall succeed to all the privileges
and rights which the trust company may have had with respect to any
wills, not admitted to probate at the time of the conversion, in which
the trust company was named as executor, it cannot be said that the
naming of the trust company as executor in such a will was a thing
which passed as property or as an asset when the trust company became
a national bank.

There are fundamental differences between a trust company organized
under the laws of this Commonwealth and a national bank organized
under the acts of Congress, with respect to being executor.

A national bank into which a trust company has been converted under the
provisions of U. S. Rev. Sts. § 5154, or a national bank which is the
result of consolidation under 40 U. S. Sts. at Large, 1043, of a trust
company so converted with another national bank, is not the "execu-
tor named" in a will which names the trust company as executor,
within the meaning of those words in G. L. c. 192, § 4, and is not en-
titled to maintain a petition for the appointment of itself as executor
under such will.

PETITION, filed in the Probate Court for the county of
Middlesex on October 6, 1923, for the proof of the will of
Edward E. Parks, late of Belmont, in which Hazel Chandler
Parks and the Commonwealth Trust Company of Boston
were named as executors, for the appointment of the peti-
tioner and Hazel Chandler Parks as executors, the petitioner
alleging that the Commonwealth Trust Company of Boston
had been converted into The Commonwealth National Bank

of Boston under U. S. Rev. Sts. § 5154, and that that national bank had become consolidated with The Fourth-Atlantic National Bank of Boston under the name The Commonwealth-Atlantic National Bank of Boston, in accordance with 40 U. S. Sts. at Large, 1043. Also, a

PETITION, filed in the Probate Court for the county of Essex on October 4, 1923, for the proof of the will of B. Parker Babbidge, late of Salem, in which The International Trust Company of Boston was named as executor, and for the appointment of the petitioner as executor, the petitioner alleging that it was successor by conversion and consolidation of The International Trust Company of Boston.

No party appeared to oppose either petition. The admitted facts are described in the opinion.

The first petition was heard by *Leggat*, J., who caused to be entered a decree that the petitioner was not named as executor in the will of Edward E. Parks, and was not entitled to the proof and allowance thereof or to apply for letters testamentary either for itself or for Hazel Chandler Parks, and that the petition be dismissed. The petitioner appealed.

The second petition was heard by *White*, J., who reserved and reported the case for determination by this court.

*J. W. Worthen & S. C. Rand,* (*S. B. Ecker* with them,) for The Commonwealth-Atlantic National Bank of Boston.

*C. L. Favinger,* for The First National Bank of Boston.

RUGG, C.J. These two cases present the same fundamental question. Each is a petition, by a national banking association possessing a special permit to act as executor of wills under Act of September 26, 1918, c. 177, § 2, 40 U. S. Sts. at Large, 968, amending c. 6, § 11 (k) of the Federal Reserve Act of December 23, 1913, 38 U. S. Sts. at Large, 262, for the proof of a will of a deceased resident of this Commonwealth and the issuance of letters testamentary to it, where in the instrument offered for probate as the will there was named as executor a then existing Massachusetts trust company which later than the date of the said instrument became converted into a national bank under the provisions of U. S. Rev. Sts. § 5154, and thereafter consoli-

dated with another national bank under the charter of such other national bank with the approval of the comptroller of the currency, into one national banking association, in conformity with Act of Congress of November 7, 1918, c. 209, 40 U. S. Sts. at Large, 1043, such consolidated national banking association being the petitioner. In one case the national bank into which the trust company was converted was granted a special permit under the national bank law to act as executor before its consolidation with the other national bank, and in the other case it was not. We do not regard that factor as of significance in this connection. The question is, whether such national bank is entitled to the issuance of letters testamentary to it as the person named as executor in the will, although the testator named as his executor a State trust company, which thereafter became converted into a national bank and still later effected a consolidation with the petitioner under its charter.

A trust company organized under the laws of this Commonwealth may be appointed executor of a will " under the same circumstances, in the same manner, and subject to the same control by the court having jurisdiction of the same, as a legally qualified individual." G. L. c. 172, § 52. There is no statute of this Commonwealth touching the appointment of a national bank as executor. By virtue of Act of September 26, 1918, c. 177, § 2, 40 U. S. Sts. at Large, 968, amending the Federal Reserve Act of December 23, 1913, 38 U. S. Sts. at Large, 262, c. 6, § 11(k), as interpreted by *First National Bank of Bay City* v. *Fellows*, 244 U. S. 416, and *Burnes National Bank* v. *Duncan*, 265 U. S. 17, decided April 28, 1924, the courts of this Commonwealth are required to appoint national banks as executors upon the same conditions as they would appoint trust companies organized under the laws of this Commonwealth. Of course we accept, as we are bound to accept, that principle in all its amplitude and with all its implications. That principle does not reach to the facts here presented. It seems to us to have no controlling effect on the principle on which the cases at bar ought to be decided.

Express and detailed provision is made by U. S. Rev. Sts.

§ 5154 for the conversion of a State bank into a national banking association. There has been compliance with all provisions of that act and the issuance of the certificate to that effect by the comptroller of the currency in each case. There is now no provision in our statutes, such as formerly existed, authorizing a State bank or trust company to become converted into a national bank. Our earlier statutes on that subject were repealed by Pub. Sts. c. 224. That is not a decisive consideration. We attribute no weight to it because in *Casey* v. *Galli*, 94 U. S. 673, it was said at page 678 that " No authority from the State was necessary to enable the bank so to change its organization. The option to do that was given by the forty-fourth section of the Banking Act of Congress. 13 Stat. 112. The power there conferred was ample, and its validity cannot be doubted. The act is silent as to any assent or permission by the State. It was as competent for Congress to authorize the transmutation as to create such institutions originally." That proposition must be regarded as settled and controlling in all cases to which it is applicable.

It is provided by U. S. Rev. Sts. § 5154, as amended by the Act of December 23, 1913, c. 6, § 8, 38 U. S. Sts. at Large, 258, 259, that upon the conversion of the State bank into the national bank, the latter " shall have the same powers and privileges, and shall be subject to the same duties, liabilities, and regulations, in all respects, as shall have been prescribed by the Federal Reserve Act and by the national banking Act for associations originally organized as national banking associations."

The force and effect of the federal statutes concerning the conversion of a State bank into a national bank have been adjudged in several cases. It was held in *Atlantic National Bank* v. *Harris*, 118 Mass. 147, an action of contract on a claim running to a State bank which had been converted into the plaintiff national bank, that the completion of the conversion without further action carried to the national bank by operation of law the right to all the property, and the assignment and transfer of all personal property and rights of action and the liability to pay all debts of the State bank.

The case of *Metropolitan National Bank* v. *Claggett*, 141 U. S. 520, was an action brought on bills issued by a State bank against the national bank into which it had been converted. The action was in the nature of a contract. It was held that the change or conversion did not close the business of banking by the State institution, "nor destroy its identity or its corporate existence, but simply resulted in a continuation of the same body with the same officers and stockholders, the same property, assets, and banking business under a changed jurisdiction; that it remained one and the same bank and went on doing business uninterruptedly." In *Michigan Ins. Bank* v. *Eldred*, 143 U. S. 293, action was brought on a judgment. With reference to the effect of the conversion it was said that the State bank had "become a national bank, and its name been changed accordingly, without affecting its identity, or its right to sue upon obligations or liabilities incurred to it by its former name."

The effect of the consolidation of two national banks is stated in Act of Congress of November 7, 1918, c. 209, § 2, 40 U. S. Sts. at Large, 1044, in these words: "And all the rights, franchises, and interests of the said national bank so consolidated in and to every species of property, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national bank into which it is consolidated without any deed or other transfer, and the said consolidated national bank shall hold and enjoy the same and all rights of property, franchises, and interests in the same manner and to the same extent as was held and enjoyed by the national bank so consolidated therewith." So far as we are aware there has been no interpretation of this statute by the Supreme Court of the United States. We do not regard it necessary for the purposes of this case to make a critical analysis of the meaning of this statute. It may be assumed that its purpose was to continue the identity of the old bank in the bank into which it is consolidated. See *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine Railroad*, 245 Mass. 52, 58, 59, and cases there collected, *City National Bank* v. *Phelps*, 97

N. Y. 44, *Matter of Bergdorf,* 206 N. Y. 309, *Chicago Title & Trust Co.* v. *Zinser,* 264 Ill. 31, *Chicago Title & Trust Co.* v. *Doyle,* 259 Ill. 489, *Coffey* v. *National Bank of State of Missouri,* 46 Mo. 140.

The record does not disclose to what extent the responsible management, the directors and executive officers of either of the original trust companies is continued in the petitioning national bank. The capital stock of each petitioner is largely in excess of that of the original trust company. Inferences of important changes in executive control might be warranted by this fact. This circumstance is not regarded as decisive.

The naming of the trust company as executor in the will was not a thing which, under the terms of the several statutes, passed as property or an asset when the trust company was converted into a national bank or when that bank was consolidated into the petitioner. The designation in a will of one as executor does not confer a property right upon the person so designated. However precious may be the mark of confidence bestowed by such nomination, it does not amount to property. There is nothing tangible about it. Nothing vests in a person so nominated by the mere execution of the will. It can stand on no firmer ground than a devise or bequest in the will of a living person. The will is ambulatory and may be changed, revoked or canceled by the maker at any time during his life. Even under the strict rules of the common law as to the disqualification of witnesses on the ground of interest, it was held that an executor who was not a legatee might be a witness to prove the execution of the will and the sanity of the testator. He only became disqualified by accepting the trust and thus rendering himself liable under the statute to the possibility of costs. *Sears* v. *Dillingham,* 12 Mass. 358, 360. *Wyman* v. *Symmes,* 10 Allen, 153. Those decisions are at variance with the idea of a property interest of any nature arising from a designation as executor. Persons executing a trust of this character have been held to have no such interest in the emoluments likely to flow from their continued administration of the trust as to constitute them on that ground persons " ag-

grieved " by an order terminating the trust for reasons not connected with their wrongdoing. *Ensign* v. *Faxon,* 224 Mass. 145, 150. *Hayden* v. *Keown,* 232 Mass. 259.

The situation is that a trust company organized under the laws of this Commonwealth was named as his executor by a man in executing his will. That trust company became converted first into a national bank organized under the laws of the United States and then that national bank consolidated into another national bank under other laws of the United States. That last bank petitions for appointment of executor of the will of the man, who in the meantime has died. There is no explicit provision in any of the governing statutes to the precise effect that the converted or consolidated national bank shall succeed to all the privileges and rights with respect to unproved wills which any of its predecessors named as executors may have had. Since testamentary rights are derived from legislation, the argument would be strong that a statute of that kind by a legislative body of competent jurisdiction would be effective. That question is not presented on this record. No such legislation exists in this Commonwealth. There is no statute which by fair implication covers such a situation. The testator in his will named a trust company organized under the laws of this Commonwealth to act as his executor. After he is dead a corporation under a different name organized under the laws of the United States comes forward and contends that it is entitled to appointment as executor because of the nomination of the testator. Confessedly it is not named in the will. That contention is grounded on the proposition that the last corporation is the same in the eye of the law as the corporation named as executor in the will, though bearing now a different designation. For many purposes the new corporation is the successor of the old and continues its business identity.

There are fundamental distinctions between a trust company organized under the laws of this Commonwealth and a national bank organized under the acts of Congress with respect to being executor.

They are organized under the laws of different jurisdictions.

They owe allegiance to different sovereignties. They are controlled by different laws.

Trust companies are governed in respect to their administration of trusts, including what they may do as executors, by G. L. c. 172, §§ 49–59, both inclusive. In reviewing these sections it will be convenient to consider executors and trustees together, since the same principles govern and in one of the wills here involved the trust company was named as trustee as well as executor.

A trust company may be appointed executor or trustee " subject to the same control by the court having jurisdiction of the same, as a legally qualified individual." There is no similar provision in the acts of Congress on this subject. We do not pause to discuss whether a national bank once appointed executor can be made so subject in every particular. That question may sometime require discussion.

There are in G. L. c. 172, §§ 49–59, specific limitations and definite directions as to the investment, care and security of funds so held by a trust company. There is express provision that it may invest such funds " in the same way, to the same extent, and under the same restrictions as an individual " in a like position. § 53. These rules are fairly well settled for this Commonwealth. *Harvard College* v. *Amory*, 9 Pick. 446. *Kimball* v. *Whitney*, 233 Mass. 321, 331. It is matter of common knowledge that different rules exist in other jurisdictions. What rules may be adopted with respect to national banks cannot be foretold with certainty. Although it may be that, when appointed by our courts to trust positions, national banks may be held to the same degree of responsibility as our individual executors, there is now no provision on this subject in the acts of Congress. How far the jurisdiction of Congress over this subject by future enactments may be held to extend is wholly problematical.

It is provided in § 54 that money, property or securities received by a trust company in a trust capacity shall be " a special deposit " and the accounts kept separate. " Such funds and the investments or loans thereof shall be specially appropriated to the security and payment of such deposits,

shall not be mingled with the investments of capital stock or other money or property belonging to such corporation, or be liable for the debts or obligations thereof." Similar provisions in §§ 61, 62, as to investments in savings departments of trust companies have been interpreted so as to be a genuine protection to such special deposits. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 478. It is provided in Act of September 26, 1918, c. 177, § 2 (k), 40 U. S. Sts. at Large, 968, that national banks " shall segregate all assets held in any fiduciary capacity from the general assets of the bank . . . Funds . . . held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board." We do not know how this provision may be interpreted. Its only significance in this connection is that it is materially different from the governing statute of this Commonwealth respecting trust companies.

By G. L. c. 172, § 55, the capital stock of a trust company " with the liabilities of the stockholders thereunder, shall be held as security for the faithful performance " of the trust of executor or trustee. Similar provisions of § 63, for the protection of deposits in savings departments of trust companies have been found to be a genuine security in case of liquidation of a trust company. *Commissioner of Banks in re Prudential Trust Co.* 244 Mass 64. There is no provision similar to this in the federal statutes. There is, however, a clause in § 2 (k) to the effect that, in the event of the failure of a bank, " the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart [under the clause last quoted from that section as condition for using trust funds in its business] in addition to their claim against the estate of the bank."

We do not undertake to determine whether the statutes of this Commonwealth or the federal statutes afford greater security in these particulars to the estate of a testator and its beneficiaries. The relevancy of this comparative review

of their several provisions is that the statutes differ in essential aspects one from the other.

The supervision of a national bank and its periodic examinations are under the general direction of the comptroller of the currency under powers conferred and mandates imposed by Congress. See U. S. Rev. Sts. § 5240, as amended by Act of December 23, 1913, c. 6, § 21, 38 U. S. Sts. at Large, 271. The supervision of trust companies is vested in the commissioner of banks under G. L. c. 167, §§ 1 to 11, both inclusive. These provisions of the statutes in the two jurisdictions are divergent in important ways.

The liquidation of a national bank in case of failure under the federal laws is different in material particulars from that of a trust company under the statutes of this Commonwealth. Compare U. S. Rev. Sts. §§ 5234–5242, and acts in amendment and in addition, with G. L. c. 167, §§ 22 to 36.

By G. L. c. 192, § 4, when a will has been proved and allowed, " the Probate Court shall issue letters testamentary thereon to the executor named therein . . . ." Our law has held with some strictness that the person actually named as executor is the one to serve. The provincial and common law practice of making the executor of a deceased executor the executor of the first testator was early changed. *Davis, petitioner*, 237 Mass. 47, 49. The only ground on which the petitioner in each of these cases can seek proof of the will and appointment as executor is that it is designated in the will as executor. Nomination of a person to act as his executor by one making his will imports signal trust and confidence in the particular person so named. Such nominations with respect to natural persons as matter of common knowledge are inserted in a will because the one executing the will reposes special reliance upon the individual integrity, sagacity, capacity, good faith, friendliness and sympathy with testamentary wishes on the part of the specified person. A trust company or bank, although a corporation, is not in this respect utterly impersonal. One making his will well may be thought to have a preference between such institutions as to the one to carry out his testamentary desires. One naming a corporation to act as executor or trustee cannot

rely upon continuance of the same management. Capital stock may change hands. Officers may die or be dismissed and others of widely varying characteristics and temperaments be substituted. Policies may be altered. Reputation may fluctuate. All these and like hazards must be taken by a person who nominates a corporation as his executor or trustee. These factors do not constitute a change in the legal person, however much they may affect the actual character of the institution. It must be recognized, also, that significant modifications may be wrought by the law governing or affecting a corporation without interrupting its continued identity. *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine Railroad,* 245 Mass. 52, 59. The petitioner in each of the cases at bar for most, perhaps for all, business purposes under the authority of decisions already cited, is identical with the trust company of whose property and assets it has become possessed. Nevertheless, it seems to us that, with regard to being executor of the will of a person who named the trust company organized under the laws of this Commonwealth, the petitioner cannot rightly be treated as the person so named in the will. The petitioner is a national bank and not a trust company. The petitioner in each case is not the person actually named as executor in the will. It possesses powers different from those possessed by the person so named. It is governed by laws unlike those controlling the kind of corporation named in the will. It is created by and the subject of a different sovereignty. The petitioner is not governed by the policy of this Commonwealth as to its corporate powers, duties and responsibilities. Those are and must continue to be delimited by a legislative body over which this Commonwealth has no jurisdiction. The duty of courts commonly is to carry out the purposes of testators as expressed in their wills. This principle applies to the appointment of executors.

All these considerations lead to the conclusion that the petitioner is not the " executor named " within the meaning of those words in G. L. c. 192, § 4, in the instrument offered for probate as the last will of each decedent.

In The Commonwealth-Atlantic National Bank of Boston, petitioner, the decree dismissing the petition is affirmed. In The First National Bank of Boston, petitioner, a decree may be entered dismissing the petition.

*So ordered.*