WORCESTER COUNTY NATIONAL BANK, petitioner.

Worcester.   March 5, 1928.— May 24, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Trust Company*, Consolidation with national bank.  *National Bank. Executor and Administrator*, De son tort.  *Probate Court*, Account. *Constitutional Law*, Separation of departments of government, Separable unconstitutional provision.  *Statute*, Construction.  *Words*, "Bank," "Franchise."

Consolidation of a Massachusetts trust company with a national banking association by the method prescribed in § 3, added to c. 209, 40 U. S. Sts. at Large, 1044, by 44 U. S. Sts. at Large, Part 2, 1224, 1225, is permissible and valid.

Upon such consolidation, the trust company goes out of existence, except for the purpose of discharging existing obligations and liabilities as required by the last words of G. L.·c. 172, § 44, as amended by St. 1922, c. 292; and its assets become the property of the national banking association, which is not a newly created organization but an enlargement of the continuously existing national bank.

As a result of such consolidation, the identity of the trust company as an executor under a will, appointed by a probate court of this Commonwealth, is not continued in the national banking association, but is extinguished.

The trust arising from appointments by a probate court of this Commonwealth to such positions as executor, administrator and the like is highly personal; it is not contractual, is not a property right, and involves no pecuniary right on the part of the fiduciary.

The words of § 3, added to c. 209, 40 U. S. Sts. at Large, 1044, by 44 U. S. Sts. at Large, Part 2, 1224, 1225, carry the unmistakable import that in case of the consolidation therein described the national banking association shall possess and enjoy all appointments as executor, administrator, or other fiduciary held by the absorbed State bank by virtue of any decree of any court without further action by the appointing court, as fully and completely as if it were the State bank, or as if it originally had been appointed to these fiduciary positions by the court.

Such succession of the national banking association, without action of a probate court, to the fiduciary relation formerly occupied by the trust company under appointment of a probate court of this Commonwealth, would be, in the words of § 3, "in contravention of the law" of this Commonwealth and outside the power and authority of the Congress.

That portion of said § 3 which provides for succession upon such consolidation of the national banking association, without action by a probate court, to the fiduciary relation held by the trust company under an appointment by a probate court of this Commonwealth, is subsidiary and incidental to, and separate and distinct from, the main object of the section, so that a consolidation within its terms may be valid although, after it is effected, the national banking association cannot without a decree of a probate court succeed to a fiduciary relation formerly held by the trust company under such a decree.

After such a consolidation of a Massachusetts trust company and a national banking association, the national banking association is not entitled, as "successor to" the trust company, to render to a probate court, which previously had appointed the trust company as executor under a will, the first and final account of the executor.

PETITION, filed in the Probate Court for the county of Worcester on February 14, 1928, by Worcester County National Bank of Worcester for the allowance of a first and final account, filed by it as successor to Fitchburg Bank and Trust Company, which had been appointed executor of the will of Julia A. Legnard, late of Fitchburg.

The petition was heard by *F. H. Chamberlain*, J., who, without further action, reported the facts and questions of law involved to this court for determination.    Material facts are stated in the opinion.

*W. T. Forbes*, for the petitioner, submitted a brief.

No argument nor brief for the respondent.

RUGG, C.J.    This case is reported on a finding of material facts for determination whether the petitioner is entitled to render the account.    The pertinent facts are that the Fitchburg Bank & Trust Company, a corporation organized under the laws of this Commonwealth, was appointed on April 21, 1926, by the appropriate court of probate executor of the will of Julia A. Legnard and qualified by giving bond.    No change in the administration of this estate appears on the court records.    The said Fitchburg Bank and Trust Company, located within our county of Worcester, consolidated with the Merchants National Bank of Worcester, a national banking association organized under the laws of the United States and also located within our county of Worcester, under the corporate title, Worcester County National Bank of Worcester, pursuant to the provisions of the Act of Congress approved on February 25, 1927, c. 191, § 1; 44 U. S. Sts. at Large, Part 2, 1224, 1225, amending an Act approved November 7, 1918, c. 209; 40 U. S. Sts. at Large, 1044, by adding at the end of said c. 209 a new section, being § 3 thereof. For convenience, this will be referred to hereafter in this opinion as said § 3.    See Act of Congress of May 1, 1886, c. 73, § 2; 24 U. S. Sts. at Large, 18.    The certificate approving the consolidation is dated June 27, 1927.    It is assumed that the consolidation took effect on that date.

The first statute purporting to authorize a trust company organized under the laws of a State to consolidate directly with a national banking association was said § 3.    Its provisions, so far as material to the grounds of this decision, are that any bank, defined to include a trust company, incorporated under the laws of any State, "may be consolidated with a national banking association located in the same county . . . under the charter of such national banking association on such terms and conditions as may

be lawfully agreed upon" in the manner specified; "and all the rights, franchises, and interests of such State . . . bank so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests including the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State . . . bank so consolidated with such national banking association. . . . No such consolidation shall be in contravention of the law of the State under which such bank is incorporated."

First. The first question to be decided is whether consolidation of a Massachusetts trust company with a national banking association is permissible and valid as provided for in said § 3. On this aspect of the case we shall deal only with consolidation in its general features and leave for later consideration the meaning and effect, as declared in said § 3, of such consolidation on the Massachusetts corporation and its fiduciary appointment by the court of probate, and whether these provisions are in contravention of the law of this Commonwealth.

There is no statute of this Commonwealth prohibiting in terms the consolidation of a trust company organized under the authority of Massachusetts laws with a national bank. We are of opinion that there is no policy of the Commonwealth declared in any statutes on the subject of such consolidation. It is provided by G. L. c. 172, § 44, as amended by St. 1922, c. 292, that "No trust company shall be merged in or consolidated with another trust company except" upon the terms and in the manner there specified. These statutory words in their context and by the express terms of G. L. c. 172, § 1, refer exclusively to trust companies organized under the laws of this Commonwealth. These statutory words, although they do not authorize, do not prohibit a

consolidation of a Massachusetts trust company with a national bank. Further provisions of said § 44 as amended touching "the sale or exchange of all the property and assets, including the good will and corporate franchise, of a trust company" have no relevancy to the facts disclosed on this record because a consolidation such as here is in issue is not "a sale or exchange" of the property and assets of the trust company. The final sentence of said § 44 as amended is this: "The charter of a trust company the business of which shall, on or after July first, nineteen hundred and twenty-two, be consolidated or merged with, or absorbed by, another bank or trust company, shall be void except for the purpose of discharging existing obligations and liabilities." It is to be observed that here for the first time occur the words "another bank" coupled with the words "trust company." The use of the word "bank" in this connection, in a chapter devoted solely to the subject of trust companies, bears some indication of legislative recognition of the fact that a consolidation or merger of a trust company with a "bank" was contemplated. By said c. 172 and by G. L. c. 167, a bank is a different institution from a trust company. So far as we are aware or have been able to discover, there is no statute of this Commonwealth authorizing any State bank, as distinguished from a trust company, to consolidate with a trust company; and there is no statute, except said § 44 as amended, authorizing a trust company to consolidate with another institution transacting any branch of the business of banking. The use of the word "bank" in the context shown in said § 44 as amended renders it impracticable to hold rightly that consolidation of a trust company with a national bank, subject to the limitation expressed in the final sentence of said § 44 as amended, is contrary to declared legislative policy even though at the time of the enactment of St. 1922, c. 292, no such direct consolidation was permissible under any Act of Congress. An indirect and roundabout method of consolidation theretofore was possible by means (1) of the conversion of a trust company into a national bank under U. S. Rev. Sts. § 5154, and (2) of the consolidation of the national bank thus established with another

national bank under the charter of such other national bank under Act of Congress of November 7, 1918, c. 209, 40 U. S. Sts. at Large, 1043. That method has been followed in some instances, as shown by the record in *Commonwealth-Atlantic National Bank of Boston, petitioner*, 249 Mass. 440. The Legislature may have had that method of accomplishing the result in mind in phrasing the final sentence of said c. 292. It would have been simple for the Legislature to have declared that such consolidation or merger was in contravention of the policy of the Commonwealth if such had been its purpose.

There is no provision in the statutes of this Commonwealth authorizing or recognizing the consolidation of a trust company or bank organized under such statutes with a national banking association. Formerly there were statutes respecting the conversion of a State bank into a national bank under Act of Congress of June 3, 1864, c. 106, § 44; 13 U. S. Sts. at Large, 112, now U. S. Rev. Sts. § 5154. See St. 1863, c. 244, St. 1864, c. 190. Of course these early statutes never were applicable to a consolidation of a State bank with a national bank, which appears first to have been authorized by said § 3, (44 U. S. Sts. at Large, Part 2, 1225, 1226). But those early statutes were repealed by Pub. Sts. c. 224. It is quite possible that that repeal came about because such statutes were thought to be unnecessary in view of the decision in *Casey* v. *Galli*, 94 U. S. 673, to the effect that no enabling State statute was required to accomplish such change and conversion.

This review of the statutes of this Commonwealth shows that there has been no exercise of whatever power may reside in the State to declare a general policy against the consolidation of a State trust company with a national bank. Thereby in effect that field is left open to the exercise by Congress of whatever power it possesses over that subject. *Commonwealth* v. *Nickerson*, 236 Mass. 281, 292, 293. Such consolidation, however, must be subject to the limitation already quoted from the final sentence of St. 1922, c. 292, amending G. L. c. 172, § 44.

It follows that, speaking broadly, the consolidation of a Massachusetts trust company with a national banking association is not "in contravention of the law" of this Commonwealth, subject to the limitation in St. 1922, c. 292, amending G. L. c. 172, § 44, and to the limitations hereinafter stated.

The question was directly raised in *Casey* v. *Galli*, 94 U. S. 673, whether a State bank could change its organization into that of a national banking association without any authority given by the State law in its charter or otherwise to make the change. It was said at page 678, "No authority from the State was necessary to enable the bank so to change its organization. The option to do that was given by the forty-fourth section of the Banking Act of Congress, 13 Stat. 112. [U. S. Rev. Sts. § 5154.] The power there conferred was ample, and its validity cannot be doubted. The act is silent as to any assent or permission by the State. It was as competent for Congress to authorize the transmutation as to create such institutions originally." We are unable to perceive any sound distinction between the power of Congress to authorize the conversion of a State bank into a national bank and its power to authorize the consolidation of a State bank with a national bank under the charter of the national bank. If no State legislation was necessary to accomplish such conversion, it seems to us that no State legislation is necessary to accomplish such consolidation. Relying upon the authority of *Casey* v. *Galli*, 94 U. S. 673, we are of opinion that in general consolidation of a Massachusetts trust company with a national banking association as prescribed in said § 3, is permissible and valid.

Second. The next question to be determined is what is the legal effect of such consolidation upon the trust company and upon the national bank. The words of said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226) are explicit to the point that the consolidation shall be "under the charter of such national banking association." This of itself is clear indication of intent that the State trust company shall not continue as a corporation in combination with the national bank. The words of St. 1922, c. 292, amending G. L. c. 172, § 44,

are equally explicit that upon any consolidation of a Massachusetts trust company, whether with a bank or another trust company, its charter "shall be void except for the purpose of discharging existing obligations and liabilities." The statutes of this Commonwealth upon the subject of a trust company, owing its creation and existence exclusively to those statutes, must be valid and binding to this extent. The later provision of said § 3 that there shall be transferred to the national banking association and be held by it among other things the "franchise" of the State bank, cannot mean its right to be a corporation. The right to transfer franchise powers of a corporation organized under the laws of one sovereignty to a corporation organized under the laws of a different sovereignty is extraordinary. It cannot be implied in the absence of explicit statutory enactment to that end. There is no such provision in the statutes of this Commonwealth. Any other conclusion would be in contravention of the laws of this Commonwealth. It is manifest from the terms of said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226) and from the terms of said St. 1922, c. 292, that the charter of the trust company here in question became void on the consolidation (except for purposes not here material), and that the only corporation now operative is the national bank. The trust company as a Massachusetts corporation has ceased to be an institution capable of transacting business. The national bank existing before the consolidation has continued to exercise all its functions without alteration or modification under the same charter since the consolidation as before. The consolidation contemplated by said § 3 is an absorption of the State bank with all its assets by the national banking association, which retains its corporate identity. Its provisions differ in this particular from many statutes authorizing the consolidation of corporations, which effect the extinguishment of the constituent corporations and the establishment of a new corporation.

There is no requirement in said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226) or elsewhere, so far as we can discover, that the comptroller of the currency must issue a certificate of consolidation, although there is an implication in the pro-

vision touching dissenting stockholders (not herein quoted) that he must approve such consolidation. The certificate printed in the record cannot be thought to be more than the signification of approval of the consolidation by the comptroller of the currency. It is in no sense a charter. By the very terms of said § 3, the consolidation is "under the charter of such national banking association," that is, its preëxisting charter, upon which said § 3 casts no invalidity, but which continues unimpaired, and is the only legal basis for the national bank after the consolidation. See U. S. Rev. Sts. § 5169; Act of Congress of July 12, 1882, c. 290, § 2; 22 U. S. Sts. at Large, 162; Act of Congress of April 12, 1902, c. 503; 32 U. S. Sts. at Large, 102.

The result is that the trust company chartered by this Commonwealth has gone out of existence; all its property of every name and nature has gone into the possession and has become the property of the national bank, and the national bank continues its existence and identity under its original charter. The trust company has lost its identity and its assets have become those of the national banking association. The latter is not a newly created organization but an enlargement of the continuously existing national bank. *Tomlinson* v. *Branch*, 15 Wall. 460. *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665. *Yazoo & Mississippi Valley Railway* v. *Adams*, 180 U. S. 1, 19–22. *Worcester County National Bank, petitioner, ante*, 394.

In view of this legal effect, in its general aspects, of the consolidation of the trust company with the national bank upon the trust company as a corporation, it must follow that its identity as a fiduciary appointed by the court of probate has not been continued in the national bank, but has been extinguished. Doubtless in many respects it may be said that the identity of corporations consolidated under the provisions of law is continued in the absorbing corporation. That is true commonly as to contract obligations. *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine Railroad*, 245 Mass. 52, 59, and cases cited. *Atlantic National Bank* v. *Harris*, 118 Mass. 147. *Iowa Light, Heat & Power Co.* v. *First National Bank of Boston*, 250 Mass. 353,

354. In discussing questions of that nature broad language may be found in opinions of courts. In *Michigan Ins. Bank* v. *Eldred*, 143 U. S. 293, 300, occur these words by Mr. Justice Gray: "the plaintiff corporation, having been originally created by the laws of Michigan, had, in accordance with the National Banking Act, become a national bank, and its name had been changed accordingly, without affecting its identity, or its right to sue upon obligations or liabilities incurred to it by its former name. Act of June 3, 1864, c. 106, § 44; 13 Stat. 112; Rev. Stat. § 5154; *Metropolitan Bank* v. *Claggett*, 141 U. S. 520." In the latter case it was said at page 527: "the change or conversion" of a State bank into a national bank under U. S. Rev. Sts. § 5154, "did not 'close its business of banking' nor destroy its identity or its corporate existence, but simply resulted in a continuation of the same body with the same officers and stockholders, the same property, assets, and banking business under a changed jurisdiction; that it remained one and the same bank." It may be noted that scarcely any of the facts thus enumerated as decisive exist in the case at bar with reference to the trust company and the national bank. Plainly the conversion of a State bank into a national bank under consideration in the two cases last cited differs in essential particulars from a consolidation such as is disclosed on this record. The expressions just quoted were used in judgments touching contract litigation, and must be interpreted as applicable to the facts then before the court. Such expressions and decisions occurring in different connections and rendered upon different issues cannot rightly be stretched to include a situation like that here presented. *Cohens* v. *Virginia*, 6 Wheat. 264, 399. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545, and cases collected. They are not applicable to the peculiar positions of trust like executor, administrator, and other fiduciaries, established under the law and practice of this Commonwealth. It is the duty of a court under our jurisdiction, before appointing an executor, administrator, trustee or other fiduciary, to inquire carefully as to his character, integrity, soundness of judgment and general capacity, and to make the appointment only after a favorable finding

on these points. That duty of inquiry is just as imperative with respect to a trust company or national bank as with respect to an individual.

The suggestion in the brief of the petitioner that, "strictly speaking, a court cannot appoint an executor," is without merit in this connection. Probate courts are required to find that a person named as executor "is legally competent and a suitable person" before issuing letters testamentary. G. L. c. 192, § 4. The form of letter testamentary in common use by probate courts and doubtless approved by this court under G. L. c. 215, § 30, begins with the assertion, after naming the person, "You are appointed executor." He has no legal authority as executor until so appointed. Manifestly the executor is appointed by the court as the result of a judicial decision.

It is quite possible that none of the officers of the Fitchburg Bank and Trust Company, in reliance upon whose character, sagacity and skill the original appointment as executor was made in the case at bar, continue as officers of the national banking association. The stockholders hardly can be the same. Its general policy of business and trust administration may have been entirely altered. Its reputation with respect to these matters may have changed radically as a consequence of the consolidation. The court has had no opportunity to pass upon these essential questions. The failure of several trust companies and at least one national banking association in this Commonwealth within recent years accentuates the importance of such judicial examination of trust companies and national banks before appointing them to positions of trust of this nature in the administration of estates.

It is to be observed that there are no statutory words in said § 3 to the effect that the identity of the State bank as a fiduciary by appointment of a court is continued in the national bank with which it has been consolidated. The absence of express words in said § 3 declaring the preservation of the identity of the State bank perhaps may not be of decisive significance. If it be assumed that it was intended by said § 3 to preserve that identity, that result is not accomplished in view of what has of necessity happened in making

the consolidation in compliance with said section and already described in detail. Identity with the trust company in the sense in which that word is used under our system of judicial appointments of fiduciaries cannot be attributed to the national bank into which the trust company has been consolidated. The identity of the trust company as such fiduciary cannot be regarded as so continued in view of the express provisions of St. 1922, c. 292, to the effect that on consolidation its charter shall be void. That its identity cannot be held to be thus continued seems to us clear in view of what has been said earlier in this opinion.

The trust arising from appointments to such positions as executor, administrator and the like is highly personal. It is not commercial. It is not contractual. It is not a property right. It involves no pecuniary interest on the part of the fiduciary. *Ensign* v. *Faxon*, 224 Mass. 145. *Commonwealth-Atlantic National Bank of Boston, petitioner*, 249 Mass. 440, 445. *Wilkinson* v. *McIntyre*, 254 Mass. 325, 330. A strictly confidential relationship of this nature cannot survive such a transmutation as is wrought by the consolidation of a State bank with a national banking association under the charter of the latter in accordance with the terms of said § 3. To treat the national banking association into which the State trust company has been consolidated as preserving the identity of the trust company in this particular would be contrary to the juridical conception and practice touching the appointment of such fiduciaries under the law of this Commonwealth.

Third. The final question for determination is whether the provision of said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226) that the national banking association shall hold and enjoy "the right of succession as trustee, executor, or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such State . . . bank," is valid and binding upon the courts of this Commonwealth. This question divides itself into three parts: (1) What do these words mean? (2) Are they in contravention of the law of this Commonwealth? (3) Do they violate any provision of the Constitution?

(1) The words just quoted from said § 3 seem to us to carry the unmistakable import that in case of consolidation the national banking association shall possess and enjoy all appointments as executor, administrator, or other fiduciary held by the absorbed State bank by virtue of any decree of any court without further action by the appointing court, as fully and completely as if it were the State bank, or as if it had originally been appointed to these fiduciary positions by the court. As has already been shown, the trust company has gone out of existence and its charter has become void "except for the purpose of discharging existing obligations and liabilities." The national banking association is a different corporation from the trust company. But under the words of said § 3, resort to the judicial functions of the Probate Court for any purpose in these changed circumstances is unnecessary. No new appointment by the Probate Court is required or contemplated. No notice of the change need be given to that court. The interposition of that court for any purpose would be superfluous.

The original appointment is to continue wholly unaffected by the fact that the State bank, in the case at bar the trust company, whose credit, standing and competency formed the basis of the judicial inquiry and action culminating in that appointment, has ceased to be, and another and different corporation whose credit, standing and competency have never been the subject of judicial inquiry for this purpose, is to act in its place as executor. This seems to us to be the plain meaning of the words of said § 3 now under consideration construed according to the common and approved usage of the language.

(2) The next part of the final question is whether the provisions of said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226), having the meaning just stated, are "in contravention of the law" of this Commonwealth under which the trust company was organized. That section, according to its plain interpretation, has a signal force and effect in its application to appointment of fiduciaries by courts of this Commonwealth. That section requires the courts of this Commonwealth to recognize and accept, without inquiry or hearing, as fiduciary in place of a State trust company now gone out

of existence, which was appointed by the court by solemn decree, a national bank which is a different corporation established under the laws of a different sovereignty, possessed of different powers, owing allegiance to a different jurisdiction, governed by different laws, subject to different governmental supervision, and controlled by different officers. That requirement relates to a subject in which all beneficiaries and others interested in estates of deceased persons and in the administration of trusts and of other funds for the benefit of minors, insane persons, and the aged and infirm under conservatorship have a vital interest. That requirement relates to a trust estate in process of settlement under the direction of the court. That requirement forecloses a hearing, where the interested parties may present their contentions in an orderly way and where a judicial decision may be rendered. That requirement is made by a pure legislative declaration without more. This touches the very foundations of judicial administration.

It is provided in art. 30 of the Declaration of Rights of this Commonwealth that, "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men." That principle is thoroughly embedded in the governmental principles of this Commonwealth on which law itself is founded. It often has been referred to in judicial decisions. It has been many times applied to the several departments of government. It is of the very fiber of our institutions. As illustrative of other adjudications, reference may be made to *Case of Supervisors of Election*, 114 Mass. 247, *Boston* v. *Chelsea*, 212 Mass. 127, *Dinan* v. *Swig*, 223 Mass. 516, 520, *Attorney General* v. *Pelletier*, 240 Mass. 264, 296, *Opinion of the Justices*, 251 Mass. 569, 615, *Sheehan, petitioner*, 254 Mass. 342, 345, *Opinion of the Justices*, 237 Mass. 619, 623, *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 115, 116. Of course that principle has never been and cannot be questioned in the

administration of the government of this Commonwealth. The only difficulty that ever arises is in its proper application. The case at bar in respect to the clause of said § 3 now under consideration seems to us to present no difficulty in the application of that principle. To accept that clause as binding would be directly contrary to the spirit and implications of said art. 30. It would be opposed to the underlying notions of the civil society founded upon the Constitution of this Commonwealth. The prohibition on the judiciary against surrendering its powers in compliance with legislative mandate is as imperative as that against exercising the executive or legislative powers. It is of no consequence in this connection from what legislative body the interference with the judicial function may come. Of course we do not decide that art. 30 of the Declaration of Rights can override the Constitution of the United States or any Act of the Congress enacted pursuant to that instrument. *Opinion of the Justices*, 234 Mass. 597, 607, and cases cited; 237 Mass. 591, 595. *Florida* v. *Mellon*, 273 U. S. 12, 17. We are now dealing only with the point whether this provision of said § 3 is "in contravention of the law" of this Commonwealth.

We are therefore of opinion that it is "in contravention of the law" of this Commonwealth in a fundamental sense for the courts to be compelled, in compliance with the mandate of a legislative body, to recognize as a fiduciary a different corporation from the corporation appointed such fiduciary, simply because, without judicial proceedings and by mere act of the stockholders and officers (who may now have ceased to be such) approved by an executive government official, the corporation appointed such fiduciary has been consolidated with it, without any judicial determination as to the fitness of such different corporation to perform the duties of fiduciary.

(3) The last part of the final question we have to decide is whether this provision of said § 3 as thus interpreted is within any power conferred upon the Congress by the Constitution of the United States and, if not within such power, whether it is separable from the rest of the act. Plainly the Congress has ample legislative power over national banks.

It may require courts of the several States to appoint national banks as fiduciaries upon the same terms as domestic banks are appointed. *First National Bank of Bay City* v. *Fellows,* 244 U. S. 416.   *Burnes National Bank of St. Joseph* v. *Duncan,* 265 U. S. 17.   This court of course recognizes the ample jurisdiction of the Congress to confer upon national banks power to compete with State banks as declared in these two adjudications. *Commonwealth-Atlantic National Bank of Boston, petitioner,* 249 Mass. 440, 442.   This provision of said § 3 goes far beyond that.   It does not declare a general policy for the State courts to pursue in performing their judicial functions with respect to national banks.   It altogether abolishes the judicial function with respect to a subject essentially judicial in its nature — viz., who shall act as fiduciaries under judicial appointment — and substitutes for that judicial function a legislative determination.   The question is not whether the State court should hold a hearing and determine, in accordance with its settled procedure and the guiding Federal statute requiring the appointment of national banks upon equal terms with domestic trust companies, whether the particular national bank ought to be appointed to the fiduciary position.   It is indubitable that that ought to be done upon appropriate proceedings.   It would be done in this Commonwealth according to its most enlightened standards of judicial conduct.   But the question is whether the State court must accept and recognize this national bank, never a party to any of its proceedings and unknown on its records, as its fiduciary, not as a result of judicial determination but as a result of the mandate of Congress.   To recognize such a mandate in substance and effect is to approve. the exercise of a judicial function by a legislative body.   We understand that it has always been held by the Supreme Court of the United States that the Congress is prohibited by the Constitution of the United States from exercising judicial functions. *Kilbourn* v. *Thompson,* 103 U. S. 168, 190, 191.   *Ocampo* v. *United States,* 234 U. S. 91, 100.   *Ex Parte Grossman,* 267 U. S. 87, 119, 120.   *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 115, 116.   *Springer* v. *Government of the Philippine Islands,* 277 U. S. 189.

This mandate of said § 3 not only is addressed to a judicial function but it relates to a subject outside the field of Congressional legislation.    It seems to us not open to debate that the general subject of the settlement of estates of deceased persons and the appointment of fiduciaries to administer trusts is within the exclusive jurisdiction of the State.    No clause of the Constitution of the United States confers any such power upon the Congress.    Art. 1, § 8.    That power is not forbidden to the States.    Art. 1, § 10.    It is a matter purely of State rather than of national cognizance.    It falls among the powers reserved to the States by art. 10 of the Amendments.    There is nothing contrary to this in *First National Bank of Bay City* v. *Fellows*, 244 U. S. 416, and *Burnes National Bank of St. Joseph* v. *Duncan*, 265 U. S. 17. Those decisions go no further than to hold that the Congress may require that the several States shall not discriminate against national banks in favor of State banks in the field of competitive business.

The consequence is inevitable, in our opinion, that the Congress has no power by simple legislative fiat and without provision for judicial inquiry and decision to make it imperative upon any court of this Commonwealth to recognize the present accountant, a corporation hitherto an utter stranger to its proceedings and records, as the officer and appointee of such court in a highly fiduciary capacity.    We feel compelled to reach the conclusion that this clause of said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226), here under discussion, is unconstitutional.

This decision, while not required by *Commonwealth-Atlantic National Bank of Boston, petitioner*, 249 Mass. 440, and *Commonwealth-Atlantic National Bank of Boston, petitioner*, 261 Mass. 217, is in harmony with the principles on which those cases rest.

We are of opinion, however, that this clause is not the dominant feature of said § 3, but is subsidiary and incidental to its main object, which is to authorize the consolidation of State banks with national banks, that this clause is separable and distinct, that the rest of the section may stand independently, and that there is no such connection between

the valid and invalid parts as to support the view that the Congress would not have enacted the valid part without the other.   That has been held in *Worcester County National Bank, petitioner, ante,* 394, this day decided.   It is within the principle of numerous decisions.   *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 113.   *Kellar* v. *Potomac Electric power Co.* 261 U. S. 428, 444.   *Lawton Spinning Co.* v. *Commonwealth,* 232 Mass. 28, 32.   *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 81, and cases there collected.   The final determination based upon all branches of this judgment is that said § 3 (44 U. S. Sts. at Large, Part 2, 1225, 1226), as we have interpreted its meaning and with the clause requiring the courts of this Commonwealth to recognize the national bank as holding without new appointment the fiduciary position held by the trust company stricken down as unconstitutional, and the consolidation here in question made pursuant to the terms of said Act of Congress, are not in contravention of the law of this Commonwealth.

It is possible that the case at bar might be disposed of with the same result on the ground that, when the will of the testator was allowed and the trust company appointed executor, there was no law permitting a trust company to consolidate directly with a national bank, and that therefore the Act of Congress under which this consolidation took place, having been enacted subsequently to the appointment of the trust company as executor, cannot be operative to affect the decree of the court previously entered and the rights of the beneficiaries of the estate of the testatrix under such decree.   See *Wright* v. *Wright,* 225 N. Y. 329, 336, 337.   This point has not been argued.   We have not considered it because it seems preferable to decide the case on the grounds already stated.

The result is that The Worcester County National Bank of Worcester, the accountant and petitioner in the case at bar, has not succeeded Fitchburg Bank & Trust Company as executor of the will of the testatrix and is not entitled to render an account as such executor.   It can account only *de son tort.*   The case upon this point is governed by *Commonwealth-Atlantic National Bank of Boston, petitioner,* 261

Mass. 217.   The question reported, namely, "whether the petitioner is entitled to render said account," is answered in the negative.

*Probate Court instructed accordingly.*