BENJAMIN F. COFFEY, Respondent, *v.* THE NATIONAL BANK OF THE STATE OF MISSOURI, Appellant.

1. *Banks and banking institutions, liability in—Trover against national banks for money deposited prior to their reorganization.*—The Bank of the State of Missouri, by reorganizing under the act of Congress of 1863 (U. S. Stat. at Large, ch. 106, p. 112, §44) as a national bank, lost none of its assets and escaped none of its liabilities. The change was a transit, and not a new creation; and in trover against the bank, after its reorganization, for certain packages of coin specially deposited with it prior to the change, *held*, that the proper rule of damages would be the value of the coin at date of its conversion, together with lawful interest thereon. *Held*, further, that the refusal of the bank, on request, to return the deposit, was evidence of conversion, and, if unexplained, was conclusive of the fact.

## *Appeal from St. Louis Circuit Court.*

*C. F. Burnes,* for appellant.

I. The defendant, being only a gratuitous bailee without hire or reward, was bound only for ordinary care, and liable only in case of gross negligence. (Sto. on Bail., § 63 ; Jones on Bail. 48 ; 2 Kent. 567 ; Foster v. Essex Bank, 17 Mass. 479 ; McLean v. Rutherford, 8 Mo. 109.)

II. There was no evidence tending to show that defendant ever did any business under the name of the Bank of the State of Missouri. On the contrary, the evidence shows that the defendant had no corporate existence prior to October, 1866.

III. The defendant was bound to exercise proper care in the selection of its officers and employees, and having employed skillful, prudent, and honest officers and agents, is not liable for loss to a gratuitous bailee without proof of conversion.

IV. The measure of damage could not in any case exceed the amount of money deposited by plaintiff, and interest thereon from a time when return thereof was demanded. Therefore it was manifest error in the Circuit Court to instruct the jury to add 38¼ per centum to the amount of gold and 28¼ per centum to the amount of silver so deposited. It was competent for the Circuit Court, on the verdict of the jury in behalf of the plaintiff,

to order that the judgment thereon should be satisfied only in gold or silver.

V. It was error for the Circuit Court to recognize by its instruction any difference in value between the several kinds of lawful money of the United States; but if a contract called for money of a particular kind, or if a particular kind of money was deposited by plaintiff as special deposit, and defendant is chargeable with it as for a conversion, then the court might enforce satisfaction of the judgment in the kind of money called for by the contract.

*Crews & Laurie*, for respondent.

I. No question has been more completely set at rest than that, in an action of trover, a demand and refusal constitute a *prima facie* case of conversion, which becomes conclusive unless rebutted or explained. (O'Donoghue v. Corby, 22 Mo. 393; Huxley v. Hartzell, 44 Mo. 370; Coggs v. Bernard, 1 Smith's Lead. Cas. 417–21, and cases cited; Magee v. Scott, 9 Cush. 148; Lockwood v. Bull & Eager, 1 Cow. 322.)

II. The rule is well settled that in actions of trover the measure of damages is the value of the property at the time of the conversion, with interest from that date.

III. The provisions of the legal tender act apply only to debtor and creditor, and the relation of debtor and creditor does not subsist between a special depositor and his bailee. The rule is clear that in cases of special deposit, the title to the money or property so deposited does not pass out of the depositor and vest in the bailee, but continues in the depositor, and he is entitled to the possession of the identical money or property so deposited. (Wood v. Edgar, 13 Mo. 451; Thompson v. Riggs, 5 Wall. 663; Jacques v. Edgell, 40 Mo. 76; 27 Ind. 426.)

IV. The National Bank was simply a reorganization of the State Bank under the act of our Legislature, pursuant to act of Congress; all the stock, assets, and capital of the State Bank passed to the National Bank. So far as legal liability was concerned, it was only a change of name. (Morse on Banks, 489; Grocers' National Bank v. Clark, 48 Barb. 26.)

CURRIER, Judge, delivered the opinion of the court.

The plaintiff sues in trover to recover the value of a special deposit originally made with the Bank of the State of Missouri, March 20, 1865, consisting of $90.95 in silver and $1,415 in gold coin. It is alleged that the defendants, July 1, 1867, converted the deposit to their own use, the bank at that time having taken its present name and become organized as a national institution. The answer denies both the fact of the deposit and of the alleged conversion, but admits that certain packages were deposited, and avers that they were duly returned to the plaintiff.

At the trial, the plaintiff read in evidence the act of March 5, 1866 (Sess. Acts 1865–6, p. 15), authorizing the Bank of the State of Missouri to reorganize as a national institution under the act of Congress, and also gave other evidence tending to prove the allegations of the petition and to show that the reorganization contemplated by the act of March 5 was in fact effected prior to the alleged conversion of the plaintiff's deposit, and that said deposit had passed into the possession of the defendant. No available objection was made to the proofs. At the instance of the plaintiff, the court, among other instructions, directed the jury, in case they found for the plaintiff, to assess as damages for the alleged conversion the currency value of the coin, the rate of premium having been agreed on between the parties. The defendants controvert the correctness of this instruction, and deny their legal accountability for the acts or negligence of the Bank of the State of Missouri.

1. By the act of Congress making provision for a national currency (U. S. Stat. at Large, ch. 106, p. 112, § 44) it is provided "that any bank incorporated by special law, or any banking institution organized under a general law of any State, may, by authority of that act, become a national association under its provisions, by name prescribed in its organization certificate; and in such cases the articles of association and the organization certificate required by the act may be executed by a majority of the directors of the bank or banking institution; and that said certificate shall declare that the owners of two-thirds of the

capital stock have authorized the directors to make such certificate, and to change and convert the said bank or banking institution into a national association under said act; and a majority of the directors, after executing said articles of association and organization certificate, shall have power to execute all other papers, and do whatever may be required to make its organization perfect and complete as a national association. The shares of any such bank may continue to be for the same amount each as they were before said conversion; and the directors aforesaid may be the directors of the association until others are elected, or appointed in accordance with the provisions of said act." Under the legislation of the State and of Congress, the Bank of the State of Missouri became a national banking association, as the evidence tended to show and as the jury found the fact to be. It thus passed from one jurisdiction to another; but its identity was not thereby necessarily destroyed. It remained substantially the same institution under another name. The transition did not disturb the relation of either the stockholders or officers of the corporation, nor did it enlarge or diminish the assets of the institution. These all remained the same under the national as they were under the State organization. The bank neither lost any of its assets nor escaped any of its liabilities by the change. The change was a transition, and not a new creation. (See Grocers' National Bank v. Clark, 48 Barb. 26; Thorp v. Wegefarth, 56 Penn. St. 82.)

2. The court laid down a correct rule of damages. It is but plain justice that the plaintiff should have back his deposit in specie, or else its value in currency. The rule of damages in trover is the value of the converted property at the date of the conversion, with the interest thereon. The plaintiff was entitled to the marketable value of his coin at that time. This subject is discussed in the Bank of the State, etc., v. Burton, 27 Ind. 426. There the court say: "While we have two kinds of money made by statute exact equivalents for the purposes of ordinary tender and payment, and yet of notoriously irregular values in commerce, results will now and then follow the application of the law which are not consonant with justice. Must it be so in this case?

It has been often held that where the amount of debt has been ascertained, the courts can not, in view of the act of Congress, recognize any difference between the gold dollar and the legal tender note of the denomination of one dollar as a means of tender or payment. But it does not follow that when the bailee of specific gold coin, to be re-delivered in specie, sells the same for a premium, and fails to re-deliver it on demand, he shall not answer in damages to the amount which he has realized by the conversion. That he should have the right to make a profit for himself by his own wrongful act, is a proposition having no foundation in justice, and is not sanctioned by any principle of law."

The case referred to was decided in accordance with the foregoing views, the court holding that when a bailee converted to his own use coin intrusted to his care, the recovery should be for the currency value of the coin. (See also Frothingham v. Morse, 45 N. H. 545.) In the case at bar, the verdict of the jury established the fact that the plaintiff left with the defendant, or with the Bank of the State of Missouri — which, for the purposes of this suit, is the same thing — the amount of coin stated in his petition as a special deposit, to be returned in specie on demand; that demand of it was duly made, and that the defendant neglected and refused to return the deposit upon such request. Such refusal was evidence of conversion, and, unexplained, was conclusive of the fact. There was no explanation, and the defendant is liable for the conversion, and, as already stated, the court gave the correct rule of damages applicable to the facts of the case.

3. The question as to the measure of diligence does not arise in the case. The bank does not put its defense upon the ground that the coin committed to its care was lost while in its custody, without fault or negligence on its part or on the part of its officers. That is not its line of defense. It denies that it ever had possession of the coin, and insists that if it ever did have it, the same was returned to the plaintiff. So the pleadings stand, and the case appears to have been tried upon that theory. The question, therefore, of diligence on the part of the bailee does not

come up. It would seem somewhat absurd for a party to insist that he had kept with reasonable care, as a gratuitous bailee, and faithfully returned, what never came to his possession.

Some other objections of a technical character are made in the brief of the defendant's counsel, but it is not perceived that the court committed any error that would warrant a disturbance of the judgment. It will therefore be affirmed. The other judges concur.