## FIRST TRUST CO. OF ST. PAUL v. UNITED STATES.

### No. 2809.

District Court, D. Minnesota, Third Divsion.

June 9, 1936.

Kellogg, Morgan, Chase, Carter & Headley, of St. Paul, Minn., for plaintiff.

George F. Sullivan, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn.

MOLYNEAUX, District Judge.

This suit was brought to recover the sum of $500 paid by the plaintiff to the defendant as a jeopardy assessment on November 23, 1934, pursuant to "Notice and Demand for Taxes" dated November 14, 1934.

The assessment was made pursuant to Schedule A2 of title 8 of the Revenue Act of 1926 (section 800 et seq.), as amended by section 722(a) of the Revenue Act of 1932 (26 U.S.C.A. § 900 note), which provides as follows:

"2. Capital stock (and similar interests), issue: On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subdivision or subdivision 1 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this Act), on each $100 of par or face value or fraction thereof of the certificates issued by such corporation or by such investment trust or similar organization (or of the shares where no certificates· were issued), 10 cents: Provided, That where such shares or certificates are issued without par or face value, the tax shall be 10 cents per share (corporate share, or investment trust or other organization share, as the case may be), unless the actual value is in excess of $100 per share, in which case the tax shall be 10 cents on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 2 cents on each $90 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued).

"The stamps representing the tax imposed by this subdivision shall be attached to the stock books or corresponding records of the organization and not to the certificates issued."

Prior to November 5, 1930, Northwestern Trust Company and Merchants Trust Company were trust companies in St. Paul, Minn., duly incorporated under the Minnesota laws. On April 8, 1925, Minnesota enacted chapter 156, Session Laws of Minnesota for 1925, which is also found as sections 7699-5 to 7699-11, Mason's Minn. St.1927. This statute authorizes (section 7699-5) any two or more trust companies operating in the same city or village to consolidate into a consolidated trust company and provides all such consolidation

shall be effected in the manner provided in the statute.

Section 7699-6 authorizes the respective boards of directors of such consolidating corporations by a majority vote of all their members to agree upon such consolidation and to prescribe the terms and conditions thereof; mode of carrying it into effect; the authorized capital stock of the consolidated corporation, which shall not exceed the aggregate authorized capital stock of all the corporations that are parties thereto; and the name of the consolidated corporation.

Section 7699-7 provides that the consolidated agreement shall be submitted to the superintendent of banks for his approval and shall not be effective until so approved by him.

Section 7699-8 provides that, either before or after such consolidated agreement has been approved by the superintendent of banks, it shall be submitted to the stockholders of each of such corporations at a meeting thereof called for such purpose, and that it shall not become binding upon such corporation until it shall have been approved at each of said meetings by the vote or ballot of the stockholders holding at least a majority of the stock of the respective corporations. A provision is also made whereby any dissenting stockholder may have his stock appraised and require the new corporation to pay him such appraised value. Section 7699-11.

Section 7699-9 provides:

"Upon the consolidation of any such corporation, with any one or more corporations, into a consolidated corporation, as herein provided, the corporate existence of each former corporation shall be merged into that of the consolidated corporation, and all and singular its rights, privileges, and franchises, and its right, title and interest in and to all property of whatsoever kind, whether real, personal, or mixed, and all things in action, and every right, privilege, interest or asset of conceivable value or benefit then existing which would inure to it under an unmerged or unconsolidated existence shall be deemed fully and finally transferred to and vested in the consolidated corporation without further act or deed and such last mentioned corporation shall have and hold the same in its own right as fully as the same was possessed and held by the former corporation from which it was, by operations of this act, transferred. Its rights, obligations, and relations to any person, creditor, depositor, trustee, or beneficiary of any Trust, shall remain unimpaired and the corporation into which it shall have been consolidated shall succeed to such relations, obligations, trusts, and liabilities and shall execute and perform all such trusts in the same manner as though it had itself assumed the relation or trust, or incurred the obligation or liability; and its liabilities and obligations to creditors existing for any cause whatsoever shall not be impaired by such consolidation, nor shall any obligation or liability of any stockholder in any corporation, which is party to such consolidation, be affected by any such consolidation, but such obligations and liabilities shall continue as fully and to the same extent as existed before such consolidation. The consolidated corporation shall become, without further act or deed, the successor of the consolidating corporations in any and all fiduciary capacities, in which each such consolidated corporation may be acting at the time of such consolidation, and shall be liable to all beneficiaries as fully as if such consolidating corporations had continued its separate corporate existence. If any consolidating corporation shall be nominated and appointed or shall have been nominated or appointed as executor, guardian, administrator, agent or trustee, or in any other trust relation of fiduciary capacities in any will, trust agreement, trust conveyance, or any other conveyance, order or judgment of any Court, or any other instrument whatsoever prior to such consolidation, (even though such will or other instrument shall not become operative or effective until after such consolidation shall have become effective) every such office, trust relationship, fiduciary capacity, and all of the rights, powers, privileges, duties, discretions, and responsibilities so provided to devolve upon, vest in, or inure to the corporation so nominated or appointed, shall fully and in every respect devolve upon, vest in, and inure to, and be exercised by the consolidated corporation, whether there be one or more successive mergers or consolidations."

Pursuant to this agreement of consolidation each of the old companies conveyed all of its assets to the consolidated trust company, and the stockholders of each company surrendered their stock and received from the new corporation stock of that corporation, as stipulated in the agreement of consolidation.

The agreement provided that the name of the consolidated company should be the

First Trust Company of St. Paul, that the authorized capital stock of the consolidated company should be 10,000 shares of $100 each; that of these 10,000 shares, 8,000 should be issued and distributed to the stockholders of the Merchant Trust Company, St. Paul, share for share, and that 2,000 thereof should be issued and distributed to the stockholders of the Northwestern Trust Company, at the rate of 1 share for 5; that each stockholder of either party shall be required to surrender his present stock certificate or certificates, duly indorsed in blank before receiving any certificate or certificates for his proportionate amount of stock in the consolidated company and before he shall exercise any right to vote his stock in the consolidated company, but for all other purposes he shall be deemed and treated as a stockholder of the consolidated company in the amount to which he shall be entitled by virtue hereof, as fully as though said exchange had been made; and that upon the date of the consolidation the consolidated company shall have all the rights, privileges, franchises, and powers granted by law to both of the constituent corporations.

The agreement further provides as follows: "Any pending action or other judicial proceeding in which any consolidating corporation is a party shall not be deemed to have abated, or to have discontinued by reason of the consolidation, but may be prosecuted to final judgment, order, or decree in the same manner as if the consolidation had not been made, or the consolidated corporation may be substituted as a party to such action or proceeding, and any judgment, order or decree may be rendered for or against it that might have been rendered for or against such corporation if the consolidation had not occurred."

The agreement was duly approved by the stockholders of the two so-called constituent corporations, and later on, November 5, 1930, by the commissioner of banks of Minnesota; the commissioner of banks of Minnesota on that date issued his certificate agreeable to the statute. After the so-called consolidation was completed, commencing on November 10, 1930, the First Trust Company of St. Paul received certificates of stock of the constituent corporations from the stockholders of those corporations and delivered in exchange certificates of stock of the First Trust Company of St. Paul in the ratio specified in the agreement.

It is the government's claim that the issue of stock just described by the First Trust Company of St. Paul was an original issue, subject to stamp tax. The plaintiff contends that it was not an original issue within the meaning of the Federal Stamp Tax Law.

The plaintiff contends that the First Trust Company is merely a continuation of the two consolidating companies and that this contention is proven out by a decision of the Supreme Court of Minnesota, entitled First Minneapolis Trust Co. v. Lancaster Corporation, 185 Minn. 121, 240 N. W. 459, 463. It is contended that the First Trust Company is not a new entity and that the consolidating corporations continued their corporate existence in the consolidated company and preserved their separate entities. In the case referred to the court said:

"Defendant attacks the validity of this law upon the claim that it impairs the obligation of contract; and constitutes a legislative invasion of judicial function, the appointment of a trustee. This contention is grounded on Worcester County Nat. Bank, Petitioner, 263 Mass. 444, 162 N.E. 217, reviewed in 279 U.S. 347, 49 S. Ct. 368, 73 L.Ed. 733, 61 A.L.R. 987.; but in that case it was held that the legislative intent was to terminate the corporate existence of the consolidating institutions, and that the consolidated institution was necessarily a new entity which could only succeed to the office of the trust by virtue of the new judicial appointment. The very point fatal to the Worcester county case is not in this case because our statute shows a contrary legislative intent. Indeed, under our statute the consolidating institutions continue their corporate existence in merged form in the consolidated corporation. * * *

"The original corporate existence originates in the power of the legislature. That same power may authorize the change as contemplated by our statute; it has not substituted any new successor fiduciary at all, but merely permits the old one to continue under a new name and then within another corporate form. Under our statute the corporate existence of each former corporation shall be merged into that of the consolidated corporation. The blood of the former flows into and through the veins of the latter. The amalgamation is much like the mixture of oil and vinegar. In mineralogy such a mixture is called a conglomerate. The constituents of the new corporation have not lost their original

identity which continues as one of the characteristics of the new corporation. It will be noted that the statute says: 'The corporate existence of each former corporation shall be merged into that of the consolidated corporation. * * * Its rights, obligations, and relations to any person, creditor, depositor, trustee, or beneficiary of any Trust, shall remain unimpaired. * * *'"

This argument went to sustain the holding of the court that in the consolidation the separate entities of the former corporations, as they are spoken of in the statute, were preserved in the new corporation, but that is not to say that the new corporation was not a new entity. The argument is that the new entity contained the old entities and that the old entities still existed by virtue of the statute. The new company was given the power to sue and be sued on any of the obligations of the old companies. It was not the same entity as that of either of the old companies.

■ So far as I am aware, the statute in question is unique and creates an unique corporation. The Supreme Court of Minnesota metaphorically calls the new corporation a conglomerate, like the mixture of oil and vinegar. Salad dressing is another name for such mixture, and the salad is something different from its constituent elements. A corporation is an imaginary entity, an artificial person. According to the theory of the state Supreme Court, the plaintiff is a corporation containing the imaginary entities of the two old companies and all of their properties and rights, but there is no practical or perceptive difference in substance between the new corporation as constituted and a case where two corporations consolidate by incorporating a new 'corporation and convey all their property and rights to it, sans their imaginary entities. The theory indulged in by the statute and ratified by the decision of the state Supreme Court was simply useful for the purpose of enabling two old corporations to secure to the new corporation succession to those properties and trust relations which were not capable of being transferred from one corporation to another without such enabling statute.

I have no doubt that as held it was within the legislative power of the state to create such a corporation, and that the holding of the state Supreme Court is binding upon the federal courts upon the question of its constitutionality with reference to the State Constitution. That court has not attempted to pass upon the question involved in this case, whether the issue of stock by the new corporation is an original issue of stock within the meaning of the taxing act involved. That is a federal question, and the holding of the state court relative to that is not binding upon the federal courts. The question before the court has to do with the meaning and application of the taxing act. For the purpose of determining whether the taxing act is applicable, the federal courts are not bound by the construction put upon the state statute by the state court. Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183; Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Mississippi Valley Trust Co. v. Com'r of Int. Rev. (C.C.A.) 72 F.(2d) 197; Dibblee v. Com'r of Int. Revenue (C.C.A.) 75 F.(2d) 617; Haussermann v. Burnet, 61 App.D.C. 347, 63 F.(2d) 124; Robinson v. Com'r of Internal Revenue (C.C.A.) 63 F.(2d) 652; Com'r of Internal Revenue v. Keller (C.C.A.) 59 F.(2d) 499; Boise Title & Trust Co. v. Evans (D.C.) 295 F. 223.

Evidently the occasion for the Minnesota statute was to enable trust companies to consolidate and to carry into the consolidated corporation, not only the assets of the old companies, but also the large amount of business secured to the old companies by virtue of the trust relations existing between them and their customers, and further to forestall and provide for any objections to the consolidation by the stockholders.

The securing of that business required the unique provisions in this statute. Except for these unusual provisions, the consolidation is not different from the ordinary case where two corporations cause to be incorporated a third corporation and convey all of their assets to it.

This case is similar and I think controlled by the case of Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, and is also similar to a case recently decided by this court entitled George A. Hormel & Co. v. United States (D.C.) 10 F.Supp. 623.

In the Raybestos-Manhattan Case the question presented was whether the issue by the petitioner of its shares of stock to the stockholders of two other companies, in exchange for the assets of those two corporations pursuant to a plan carried

out for their consolidation, involved a "transfer" taxed by section 800 et seq., title 8, Schedule A 3 of the Revenue Act of 1926, 44 Stat. 9, 99, 101 (see 26 U.S.C.A. §§ 900, 902(b), 921(b) (1).

The court held the transaction was subject to a stamp tax under the act, both on the original issue of shares and upon the transfers of stock whereby the right to receive the shares was transferred.

There was a tax imposed by the act upon the original issue and also a tax on the transfer of the right to receive the original stock issue.

In this case as in that case the question presented is whether the issue by the plaintiff of its shares of stock to the stockholders of the two former companies in exchange for their assets pursuant to a plan for their consolidation involved an original issue under the taxing act.

I can see no distinction between this case and the two cases last above cited. I therefore conclude that the tax was properly assessed.

It is claimed by the plaintiff that the tax is barred by the statute of limitations. The record indicates that the assessment was made by the Commissioner of Internal Revenue on November 10, 1934, and that the first issue of stock by the First Trust Company was made on November 10, 1930, so that the assessment is within the time prescribed by law, to wit, four years.

My conclusion is that the First Trust Company was a new, separate, and distinct entity created under the Minnesota statute, and that the stock upon which the tax was collected was an original issue, and that the tax was rightly levied and collected.