[No. 37280. En Banc. July 2, 1964.]

JOSEPH C. McMURRAY, *Respondent*, v. SECURITY BANK OF
LYNNWOOD, *Appellant*.*

*Reported in 393 P. (2d) 960.

*Michelson, Kershner & Rutter* and *Ivan Merrick, Jr.*, for appellant.

*The Attorney General, Herbert Gelman* and *Gary Sullivan, Assistants*, for respondent.

*Clarence J. Coleman*, amicus curiae.

OTT, C. J.—The legislature, in 1959, amended the state banking laws relative to the organization and powers of a state bank by adding subdivision 7 to RCW 30.08.020, as follows:

"Persons desiring to incorporate a bank or trust company shall execute articles of incorporation in quadruplicate, which shall be submitted for examination to the supervisor at his office in Olympia.

"Articles of incorporation shall state:

" . . .

" (7) That for a stated number of years, which shall be not less than ten nor more than twenty years from the date of approval of the articles (a) no voting share of the corporation shall, without the prior written approval of the supervisor, be affirmatively voted for any proposal which would have the effect of sale, conversion, merger, or consolidation to or with, any other banking entity or affiliated financial interest, whether through transfer of stock ownership, sale of assets, or otherwise, (b) the corporation shall take no action to consummate any sale, conversion, merger, or consolidation in violation of this subdivision, (c) this provision of the articles shall not be revoked, altered, or amended by the shareholders without the prior written approval of the supervisor, and (d) all stock issued by the corporation shall be subject to this subdivision and a copy hereof shall be placed upon all certificates of stock issued by the corporation. . . ."

The following statutes relating to organization and powers were not amended in 1959.

RCW 30.08.030 provides:

"When articles of incorporation complying with the foregoing requirements have been received by the supervisor, together with the fees required by law, he shall ascertain

from the best source of information at his command . . . whether the resources in the neighborhood of such place and in the surrounding country afford a reasonable promise of adequate support for the proposed bank and whether the proposed bank or trust company is being formed for other than the legitimate objects covered by this title."

RCW 30.08.040 provides for appeal from the supervisor's decision, in the event he should refuse to approve the articles of incorporation.

RCW 30.08.050 provides in part:

"In case of approval the supervisor shall forthwith give notice thereof to the proposed incorporators and file one of the quadruplicate articles of incorporation in his own office, and shall transmit another quadruplicate to the county auditor of the county in which such bank or trust company is located, and another quadruplicate to the secretary of state, and the fourth quadruplicate to the incorporators. . . ."

Pursuant to these statutory mandates, the incorporators of the Security Bank of Lynnwood sought approval of the supervisor of banking of the articles of incorporation, and authority to engage in business as a state bank in Lynnwood, Washington.

Article 7 of the proposed articles of incorporation provided:

"That for a period of not less than ten (10) years from the date of approval of these Articles, without the prior written approval of the Supervisor of Banking,

"(a) No voting share of the corporation shall be affirmatively voted for any proposal which would have the effect of sale, conversion, merger, or consolidation to or with, any other banking entity or affiliated financial interest, whether through transfer of stock ownership, sale of assets, or otherwise.

"(b) The corporation shall take no action to consummate any sale, conversion, merger, or consolidation in violation of this subdivision.

"(c) This provision of the Articles shall not be revoked, altered, or amended by the shareholders.

"(d) All stock issued by the corporation shall be subject to this subdivision and a copy hereof shall be placed upon all certificates of stock issued by the corporation."

The articles of incorporation being in conformity with the mandate of the legislature, the supervisor, following the required investigation, granted the incorporators authority, on April 12, 1961, to incorporate and do business at Lynnwood, Washington, as a state bank. The corporation will hereafter be referred to as the Security Bank.

April 16, 1963, the Security Bank sought to convert its status from a state to a national bank without seeking the written approval of the supervisor of banking, in violation of article 7 of its articles of incorporation.

The supervisor of banking commenced this action in the Superior Court for Snohomish County to prevent the Security Bank from converting to a national bank without his written approval. A temporary restraining order was granted.

The Security Bank answered the complaint and sought a declaratory judgment that approval of the supervisor was not required, by virtue of RCW 30.49.020 (enacted in 1955), which provides in part:

"Nothing in the law of this state shall restrict the right of a state bank to merge with or convert into a resulting national bank. . . ."

From the judgment requiring the written approval of the supervisor of banking, the Security Bank has appealed.

■ Article 7 of Security Bank's articles of incorporation is a statutory prerequisite to its right to exist. RCW 30.08.020 (7). It is an article which, by its terms, cannot be "revoked, altered, or amended by the shareholders" without the "prior written approval of the Supervisor of Banking." The articles of incorporation constitute a part of its contract with the state which chartered it. *State ex rel. Swanson v. Perham,* 30 Wn. (2d) 368, 375, 191 P. (2d) 689 (1948); *Opdyke v. Security Sav. & Loan Co.,* 157 Ohio St. 121, 105 N. E. (2d) 9 (1952). Article 7 requires that the supervisor of banking approve any proposal which has the effect of a

". . . sale, *conversion,* merger, or consolidation *to or with, any other banking entity* or affiliated financial interest,

whether *through transfer of stock ownership*, sale of assets, *or otherwise.*" (Italics ours.)

We are here concerned with a conversion from a state-chartered bank to a resulting national bank. Such conversion is accomplished by surrendering the stock in the state bank for stock in the resulting national bank, which is *a transfer of stock ownership* to another banking entity.

Assuming, arguendo, that this is not a transfer of stock ownership, such as contemplated by the statute, and that it is not a sale of assets, the words "or otherwise" would include this method of accomplishing the conversion. The proposed conversion by the Security Bank to a resulting national bank is governed by RCW 30.08.020 and by its articles of incorporation.

The Security Bank, in justification of its position that the consent of the supervisor of banking is not necessary to its conversion to a resulting national bank contends (1) that the resulting national bank would not be another banking entity, and (2) that, since the means of accomplishing the conversion is not a transfer of stock ownership or a sale of assets, the words "or otherwise" are limited to something in the nature of such a transfer or sale, under the rule of ejusdem generis.

The first hypothesis—that the resulting national bank is not another banking entity—is based upon RCW 30.49-.080, which provides in part:

"A resulting state or national bank shall be the same business and corporate entity as each merging state or national bank or as the converting state or national bank with all property, rights, powers and duties of each merging state or national bank or the converting state or national bank, except as affected by the state law in the case of a resulting state bank or the federal law in the case of a resulting national bank, and by the charter and bylaws of the resulting state or national bank."

As pointed out in *First Trust Co. of St. Paul v. United States,* 15 F. Supp. 634 (1936), the purpose of such a provision is to secure to the new or resulting corporation succession to those properties and trade relations which are

not transferable from one corporation to another without enabling legislation.

In discussing this "same entity" concept, courts have generally dealt with issues among shareholders, creditors, and other private parties who have contracted with the original bank.

■ We cannot believe that the legislature had such a concept in mind in requiring that article 7 be made a part of the articles of incorporation of all state banks. It is inescapable that, in its relation to the state, a state-chartered bank which converts to a resulting national bank does, by that process, become another "banking entity." In support of this conclusion, RCW 30.49.020 provides in part:

" . . .

"Upon the completion of the merger or conversion, the franchise of any merging or converting state bank shall automatically terminate."

As stated in *Opdyke v. Security Sav. & Loan Co.*, 43 Ohio Op. 463, 475, 59 Ohio L. Abs. 212, 234, 97 N. E. (2d) 435 (1950):

" . . . Conversion, on the other hand, imports a change or transformation into another and entirely new entity with all of its assets giving the life blood to the new corporation in the furtherance of the same business as originally undertaken by the corporation, however under a new name and under new laws and regulations." (This case was affirmed by the Court of Appeals, Cuyahoga County, 59 Ohio L. Abs. 257, 99 N. E. (2d) 84 (1951), and by the Supreme Court of Ohio, 157 Ohio St. 121, 105 N. E. (2d) 9 (1952).)

We conclude that the "same entity" concept of RCW 30.49.080 has no application to the restrictions which the legislature required be placed in the articles of incorporation of a state bank, with relation to the approval of the supervisor of banking of its conversion to a national bank during the first 10 years of its existence. When a state bank converts to a national bank, its state charter terminates, and the resulting national bank is subject solely to federal law. There is clearly a new entity created, and we find no merit in the "same entity" hypothesis relied upon by appellant Security Bank.

The Security Bank's second hypothesis is that article 7 of its articles of incorporation does not apply, as the conversion is not accomplished by any of the methods referred to therein, and there must be something in the nature of a transfer of stock ownership or a sale of assets to make this provision applicable.

■■ The rule of ejusdem generis is one of construction, and it is not applicable here. While the methods specifically enumerated—"through transfer of stock ownership, sale of assets"—are applicable to sales, we are also concerned with conversions, mergers, and consolidations which may be effected in various ways, and, obviously, the words "or otherwise" were necessary to encompass all of the various types of transactions involved in conversions, mergers, or consolidations.

We said, in *Republic Inv. Co. v. Naches Hotel Co.*, 190 Wash. 176, 182, 67 P. (2d) 858 (1937):

" . . . it is to be remembered that the rule of *ejusdem generis* is merely a rule of construction, and where it clearly appears in a contract or statute that general words were intended to include something more than specific descriptive words preceding, the rule will not be invoked. [citing case]"

We cannot accept either hypothesis advanced by the Security Bank, in its effort to avoid complying with restrictions placed upon its proposed conversion into a resulting national bank by its own articles of incorporation, which were adopted as a prerequisite to securing its charter as a state bank.

Finally, the Security Bank contends that,

"If R.C.W. 30.08.020 (7) should be held applicable to this case, it would have the effect of repealing R.C.W. 30.49-.020 . . . The 1959 amendment made no reference whatever to the pre-existing R.C.W. 30.49.020. . . .

*"The constitutional question need not be considered. Appellant contends that it ought not be.*

"So far as this case is concerned, we simply have two different statutes, one of which (R.C.W. 30.49.020) is applicable; and the other (R.C.W. 30.08.020(7)) is not." (Italics ours.)

The respondent, in his brief, likewise states that " . . . the problem created by the 1959 enactment of RCW 30.08-.020 is not a constitutional one."

■ Security Bank's remaining contention is that the act of 1959 (RCW 30.08.020) is not applicable to it. We do not agree. In 1961, the Security Bank was legally incorporated as a state bank. The law relative to its *organization* and *powers* provided that the *power* of such a corporation, when established, would not make it eligible to seek conversion or merger to a resulting national bank within 10 years, without the written approval of the supervisor of banking. The Security Bank, in seeking to convert to a resulting national bank within the 10-year period, did not have the statutory power or status under the act to accomplish such conversion, without the written approval of the supervisor of banking. We conclude that RCW 30.08.020 is applicable to the issues presented by this appeal.

The judgment is affirmed.

WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—I dissent. The result attained by the majority opinion, while probably desirable from the standpoint of public policy, cannot be justified in the existing status of our Washington statutes.

The applicable statutes relating to a conversion from a state bank to a resulting national bank are found where one would expect to find them, in that part of the banking code entitled "Chapter 30.49, Merger, Consolidation, and Conversion." RCW 30.49.020 states:

A. That this section is applicable where there is to be a resulting national bank.

B. Nothing in the law of this state shall restrict the right of a state bank to convert into a resulting national bank.

C. The action to be taken by such converting state bank, and its rights and liabilities, shall be the same as those prescribed at the time of the action for national banks converting into a resulting state bank by the law of the United States and not by the law of this state, except that a vote

of the holders of two-thirds of each class of voting stock shall be required for the conversion and that, on the conversion by a state into a national bank, the rights of dissenting stockholders shall be those specified in RCW 30.49.090.

This enactment is part of the comprehensive banking code adopted in 1955. Another chapter of that code is chapter 30.08 "Organization and Powers," which deals *inter alia* with how a state bank or trust company is to be organized; and in this chapter is found RCW 30.08.020 which states what shall be included in the articles of incorporation of a state bank or trust company. This section was amended in 1959 to add a seventh item to those matters which the articles of incorporation shall state. The entire section, as amended, is set forth in the addendum to this dissent. It is this seventh item that the supervisor refers to as RCW 30.08.020 (7) in his brief and states it to be the "controlling law." It is said to have placed a further condition on sales, conversions, mergers, and consolidations, *i.e.,* the approval of the supervisor.

It is patently not the law of the state of Washington, as it relates to merger, consolidation, and conversion as found in chapter 30.49. It does not purport to be a law giving the supervisor power to approve or disapprove conversions et al. *It is a law relating to what shall be stated in articles of incorporation, no more, no less.*

The legislature cannot, by the devious route of requiring certain statements to be included in articles of incorporation, thereby amend RCW 30.49.020, the statute which purportedly states all the requirements of conversion from a state bank to a resulting national bank and makes the federal law applicable thereto.

Neither am I persuaded that when the 1959 legislature used the words "any other banking entity" in the seventh item to be contained in the articles of incorporation of a state bank (see RCW 30.08.020 in addendum), it intended to repudiate what it had said in RCW 30.49.080,[1] *i.e.,* that in

---

[1] "A resulting state or national bank shall be the same business and corporate entity as each merging state or national bank or as the

the conversion of a state bank to a resulting national bank the resulting national bank shall be the same business and corporate entity with all of the property rights, powers, and duties of the converting state bank, except as affected by federal law in the case of a resulting national bank and by the charter and bylaws of the resulting national bank.

If Security Bank and the resulting national bank are not the same entity, it must be to the extent indicated by the exception, *i.e.*,

". . . except as affected by . . . the federal law in the case of a resulting national bank, and by the charter and bylaws of the resulting . . . national bank." RCW 30.49.080.

A study of § 30.49.080 satisfies me that it was enacted to make a part of the statute, relative to conversions between state and national banks, what had been earlier pointed out in many decisions.

A conversion of a state bank into a resulting national bank has been referred to as a transition and not a new creation. *Coffey v. National Bank of Missouri* (1870), 46 Mo. 140, 2 Am. Rep. 488.

The New York Court of Appeals explained why there is no change of entity, in the conversion from a state bank into a resulting national bank, in these words:

". . . The general scheme of the National Banking Act is that State banks may avail themselves of its privileges and subject themselves to its liabilities, without abandoning

---

converting state or national bank with all property, rights, powers and duties of each merging state or national bank or the converting state or national bank, except as affected by the state law in the case of a resulting state bank or the federal law in the case of a resulting national bank, and by the charter and bylaws of the resulting state or national bank.

"A resulting state or national bank shall have the right to use the name of any merging state or national bank or of the converting bank whenever it can do any act under such name more conveniently.

"Any reference to a merging or converting state or national bank in any writing, whether executed or taking effect before or after the merger or conversion, shall be deemed a reference to the resulting state or national bank if not inconsistent with the other provisions of such writing. [1955 c 33 § 30.49.080. Prior: 1953 c 234 § 8.]"

their corporate existence, without any change in the organization, officers, stockholders, or property, and without interruption of their pending business or contracts. All property and rights which they held before organizing as National banks are continued to be vested in them under their new status. Great inconveniences might result if this saving of their existing assets did not include pending executory contracts, and pending guarantees, as well as vested rights of property. Although, in form, their property and rights as State banks, purport to be transferred to them in their new status of National banks, yet in substance there is no actual transfer from one body to another, but a continuation of the same body, under a changed jurisdiction. As between it and those who have contracted with it, it retains its identity, notwithstanding its acceptance of the privilege of organizing under the National Banking Act." *City Nat. Bank of Poughkeepsie v. Phelps* (1884), 97 N. Y. 44, 50, 49 Am. Rep. 513.

It is significant that the statute (RCW 30.49.080) which provides that a resulting state or national bank shall be the same business and corporate entity as each merging state or national bank, or as the converting state or national bank, is applicable only where the transition is from a state to a resulting national bank or vice versa.

I cannot but believe that the legislature did have this "same entity" concept in mind when it made its 1959 amendment to RCW 30.08.020 and, by its reference to "any other banking entity," intended to exclude state banks converting to a resulting national bank, or national banks converting to a resulting state bank.

It seems to me that chapter 30.49 and, particularly RCW 30.49.020 and .080 govern the present situation and that the Security Bank is entitled to a decree so stating.

For the reasons heretofore indicated, I dissent.

DONWORTH and FINLEY, JJ., concur with HILL, J.

September 16, 1964.  Petition for rehearing denied.